UZZIEL P. SMITH *et al.*

*v.*

ASAHEL H. HEATH.

*Filed at Ottawa January 18, 1882—Rehearing denied March Term, 1882.*

1. MORTGAGES—*platting mortgaged premises into town lots—release of the lots by mortgagee—effect upon easements connected therewith.* A mortgagor can not make a donation of any part of the mortgaged premises, to the public or otherwise, unless the mortgagee joins with him; but the mortgagee may be bound by his express consent thereto, by acts equivalent to a positive donation, or by way of estoppel, and his assent may be implied from his making no objection, and his subsequent acts made in reference thereto.

2. Where the mortgage expressly provides for the making of a subdivision of the mortgaged premises into lots whenever the mortgagor shall deem it advisable, the consent of the mortgagee will be implied to laying out the usual streets and alleys, and when so laid out he will be bound by the act.

3. An agreement by a mortgagee for the mortgagor to subdivide the land mortgaged, into lots, and to release, on the request of the mortgagor, any one

or more of such lots on payment to him of a stipulated sum per front foot thereof, is to be treated also as an agreement to release his mortgage on the streets and alleys adjacent to the lots, and designated on the plat as streets and alleys.

4. SAME—*as to an ornamental square laid off on the plat of lots.* In this case, the mortgagor, with the consent of the mortgagee expressed in the mortgage, laid out the mortgaged premises into lots, the lots fronting upon an oblong space called a square, which was also a part of the mortgaged lands, with no street between the lots and the square. The square was named "Aldine Square," and marked "private" on the plat, which was duly prepared, acknowledged by the mortgagor, and recorded, and the mortgagee released all of the lots from his mortgage. Various persons had purchased lots in view of such square being an easement to their lots: *Held,* that the mortgagee was estopped from foreclosing his mortgage as to such square, for the satisfaction of an unpaid portion of the debt secured by the mortgage, although the land had not been subdivided and platted in exact accordance with his written consent, he having full knowledge, however, of all the facts when he made the releases of the lots.

5. In such case, when the mortgagee adopted the plat by acting upon it with full knowledge, and making releases of the lots by the numbers by which they were designated on such plat, this, after the sale of lots to others, would obviate any objection on his part that the mortgaged premises were not subdivided according to his express written assent, and would amount to a ratification of the subdivision as actually made. Parties purchasing would have the right to rely on admissions thus shown by his conduct and acts.

6. DEDICATION—EASEMENT—*of the character of use to which land may be dedicated.* Under our statute there may be a donation to the public or to any individuals, by a plat subdividing land into lots, and where a square is designated on such plat, marked "private," and lots are made to front on the same, the word "private" will indicate that the square is donated for the use of individuals who might thereafter become the owners of such lots, and not to the public, and after the sale of such lots by the plat, the grant of the square will become irrevocable.

7. There is no reason why a square in front of lots may not be regarded the same as an ordinary street would be, as affording an easement in favor of parties interested in the abutting lots. The fact that it is larger and wider than an ordinary street, and of a different shape, and is made attractive by the planting of shrubbery and flowers for ornamentation, makes it none the less an easement, in the strictest sense.

APPEAL from the Appellate Court for the First District;— heard in that court on appeal from the Superior Court of Cook county; the Hon. GEORGE GARDNER, Judge, presiding.

Messrs. PALMER & DURKEE, for the appellants:

It is unimportant to determine where the fee in the square is. If the lot owners are entitled to have the square kept open for use, it is sufficient. Merely a question of private right is involved. *Zearing* v. *Raber*, 74 Ill. 411; *Van Meter* v. *Hankinson*, 2 Whart. 309; *Selden* v. *Williams*, 9 Watts, 12; *Gridley* v. *Hopkins*, 84 Ill. 531; *Smith* v. *Town of Flora*, 64 id. 93; *Hunter* v. *Trustees of Sandy Hill*, 6 Hill, 412; 2 Smith's Leading Cases, 154, 167.

It is not at all necessary that the owner should part with the title which he has, for dedication has respect to the possession, and not the permanent estate. *Rees* v. *City of Chicago*, 38 Ill. 337; *Zearing* v. *Raber*, 74 id. 411.

As to the distinction between a dedication and an easement, see *Hunter* v. *Trustees of Sandy Hill*, 6 Hill, 407; *Pomeroy* v. *Mills*, 3 Vt. 279.

Lot owners have an easement over the square, whether the square is public or private. *Childs* v. *Chappell*, 5 Seld. 254; *Lewis* v. *Beattie*, 105 Mass. 411; Washburn on Easements, pp. 243–232; *Indianapolis, Bloomington and Western R. R. Co.* v. *Hartley*, 67 Ill. 442; *Leach* v. *Waugh*, 24 id. 230; *Bateman* v. *Buck*, 14 Eng. L. & E. 73; 3 Kent, 432, note, 433, 434; *Gebhardt* v. *Reeves*, 75 Ill. 307; *City of Cincinnati* v. *Lessee of White*, 6 Pet. 431; *New Orleans* v. *United States*, 10 id. 710; *People* v. *Jackson*, 7 Mich. 450; *Conners* v. *New Albany*, 1 Blackf. 45; Goddard on Easements, 264.

Not important that a street should be opened or plat recorded. *Trustees* v. *Walsh*, 57 Ill. 368; *Zearing* v. *Raber*, 74 id. 411.

Plat becomes part of deed, and if not referred to may be connected by parol evidence. *Trustees* v. *Walsh*, 57 Ill. 368; *Noonan* v. *Lee*, 2 Blackf. 499.

Dedication presumed, as grantor obtained enhanced price, and this latter presumption can not be contradicted by parol proof. *Wyman* v. *Mayor, etc.* 11 Wend. 487; *Waugh* v. *Leech*,

28 Ill. 492; *United States* v. *Chicago*, 7 How. 185; 2 Smith's Leading Cases, 154.

Appellee is estopped, legally and equitably, by his acts and gross *laches*. *Field* v. *Carr*, 59 Ill. 200; *Carter* v. *City, etc.* 4 Ohio, 347; Washburn on Easements, 243; *Child* v. *Chappell*, 5 Seld. 254; *Fisher* v. *Beard*, 32 Iowa, 356; *Mayor* v. *Council of Macon*, 12 Ga. 243; *Canal Trustees* v. *Haven*, 11 Ill. 556; *Dimon* v. *People*, 17 id. 416; *Rees* v. *Chicago*, 38 id. 322; *Corbett* v. *Narcross*, 35 N. H. 115; *Heard* v. *Hall*, 16 Pick. 457.

Mr. FRANCIS ADAMS, and Mr. JOHN P. WILSON, also for the appellants:

Appellee is estopped by his acts and releases from asserting any lien upon Aldine Square as against the parties owning the lots fronting on the square. *People* v. *Brown*, 67 Ill. 435; *Knoebel* v. *Kircher*, 33 id. 315; *Baker* v. *Pratt*, 15 id. 571; *Mills* v. *Graves*, 38 id. 465; *Smith* v. *Newton*, 38 id. 235; *International Bank* v. *Bowen*, 80 id. 545; *Higgins* v. *Ferguson*, 14 id. 270; *Morgan* v. *Railroad Co.* 96 U. S. 716; *Bank of United States* v. *Lee*, 13 Pet. 107.

By the plat made in May, 1874, the square was dedicated to the owners of the abutting lots for a park. *Morgan* v. *Railroad Co.* 96 U. S. 716; Rev. Stat. 1845, ch. 25, sec. 21; *Godfrey* v. *City of Alton*, 12 Ill. 29; *City of Columbus* v. *Dahn*, 36 Ind. 330; *City of Cincinnati* v. *Lessee of White*, 6 Pet. 431; *Holder* v. *Cold Spring*, 24 N. Y. 474; *Rowan's Exrs.* v. *Town of Portland*, 8 B. Mon. 232.

By releasing the lots in the subdivision, Heath has released all rights appurtenant to such lots, among which is the right to the use of the square. *Hagen* v. *Inhabitants of West Hoboken*, 23 N. J. Eq. 354.

It is well established law that the owner of property may recognize a plat or subdivision made by another of his property, by making conveyances of lots in such subdivision, and

that the owner thereby becomes bound by the subdivision. *Gridley* v. *Higgins*, 84 Ill. 528; *Smith* v. *Town of Flora*, 64 id. 93; *Zearing* v. *Raber*, 74 id. 409; *Field* v. *Carr*, 59 id. 198.

Messrs. HOLDEN & FARSON, for the appellee:

Acts relied upon as an estoppel must evidence an intention to dedicate. *Warren* v. *Jacksonville*, 15 Ill. 236; *Kelly* v. *Chicago*, 48 id. 388; *Godfrey* v. *City of Alton*, 12 id. 29; *Marcy* v. *Taylor*, 19 id. 634; *City of Chicago* v. *Wright*, 69 id. 328; *Gentleman* v. *Soule*, 32 id. 272; *Princeville* v. *Auten*, 77 id. 325; *Chicago, Rock Island and Pacific R. R. Co.* v. *Joliet*, 79 id. 25; *Manly* v. *Gibson*, 13 id. 312; *Princeton* v. *Templeton*, 71 id. 68; *Proctor* v. *Lewiston*, 25 id. 153; *Manrose* v. *Parker*, 90 id. 581; *Rees* v. *City of Chicago*, 38 id. 322.

Where a party has only a lien upon a parcel of land, and his lien is of record, and is by such record notice of his rights, no dedication by the owner can operate against the lien by way of estoppel. *Hoole* v. *Attorney General*, 22 Ala. 195; *Marston* v. *Brackett*, 9 N. H. 336; *McMannis* v. *Butler*, 49 Barb. 176; *Bigelow* v. *Topliff*, 25 Vt. 273; Bigelow on Estoppel, (2d ed.) pp. 467, 476; Herman on Estoppel, secs. 430, 435; 2 Smith's Leading Cases, (5th Am. ed.) 619, 642, 646, 660–663; Story's Eq. Jur. (12th ed.) sec. 1537; 3 Washburn on Real Prop. 75; 4 Kent's Com. (9th ed.) p. 261; *Odlin* v. *Gove*, 41 N. H. 465; *Gray* v. *Bartlett*, 20 Pick. 186; *Tongue's Lessee* v. *Nutwell*, 17 Md. 212; *Bales* v. *Perry*, 51 Mo. 449; *Dessaunnier* v. *Murphy*, 22 id. 95; *Sahler* v. *Signer*, 44 Barb. 606; *Hill* v. *Epley*, 31 Pa. St. 332; *Rennie* v. *Young*, 2 DeG. & Jones, 136; *Green* v. *Cross*, 45 N. H. 575; *Mills* v. *Graves*, 38 Ill. 465.

A private right of way or easement can not be acquired by dedication. Goddard on Easements, 263; Washburn on Easements, (2d ed.) 129, 175; *Illinois Central R. R. Co.* v. *Indiana and Illinois Central R. R. Co.* 85 Ill. 211; *Com.* v.

*Newbury,* 2 Pick. 51; *Roberts* v. *Karr,* 1 Campbell, 262; *State* v. *Strong,* 25 Me. 297; *Carpenter* v. *Gwynn,* 35 Barb. 395; *McWilliams* v. *Morgan,* 61 Ill. 92; *Illinois Ins. Co.* v. *Littlefield,* 67 id. 368; *Proctor* v. *Lewiston,* 25 id. 153.

One out of possession is not bound by dedicatory acts of others. *Hoole* v. *Attorney General,* 22 Ala. 190; Goddard on Easements, p. 160; *Winship* v. *Hudspeth,* 10 Exch. 5; *Baxter* v. *Taylor,* 4 Barn. & Ad. 72; *Arkwright* v. *Gell,* 5 M. & W. 203; *Webb* v. *Bird,* 13 Com. B. (N. S.) 841; *City of Hannibal* v. *Draper,* 36 Mo. 337.

The equitable estoppel ordinarily arising from lying by and permitting valuable improvements to be made without objection, does not arise where such expenditures are made with the knowledge of a record title, and especially where the estoppel is sought to be enforced against a mortgage only. Bigelow on Estoppel, (2d ed.) 467, 476; Herman on Estoppel, secs. 430, 435; 2 Smith's Leading cases, (5th Am. ed.) 619, 642–646, 660–663; Story's Eq. Jur. (12th ed.) sec. 1537; *Odlin* v. *Gove,* 41 N. H. 465; *Marston* v. *Brackett,* 9 id. 336; *Gray* v. *Bartlett,* 20 Pick. 186; *Tongue's Lessee* v. *Nutwell,* 17 Md. 212; *Bales* v. *Perry,* 51 Mo. 449; *Dessaunnier* v. *Murphy,* 22 id. 103; *Sahler* v. *Signer,* 44 Barb. 615; *Rennie* v. *Young,* 2 DeG. & Jones, 136; *Green* v. *Cross,* 45 N. H. 586; *Hoole* v. *Attorney General,* 22 Ala. 195; *Bigelow* v. *Topliff,* 25 Vt. 273; *Mills* v. *Graves,* 38 Ill. 465; *Scott* v. *The State,* 1 Sneed, (Tenn.) 629; *Hill* v. *Epley,* 31 Pa. St. 332; 3 Washburn on Real Prop. 75; 4 Kent's Com. (9th ed.) p. 261; *McMannis* v. *Butler,* 49 Barb. 176.

A gratuitous grantee can not claim by estoppel. A releasee of a mortgage is a gratuitous grantee. The debt must be paid. The release of the mortgage is required by statute without fee or reward. *Hoole* v. *Attorney General,* 22 Ala. 195; *Fairley* v. *Fairley,* 34 Miss. 18; *Thompson* v. *Thompson,* 9 Ind. 323; *Weaver* v. *Lynch,* 1 Casey, 449; *Goodale* v. *Scannell,* 3 Cal. 827.

Mr. JUSTICE SCOTT delivered the opinion of the Court:

The bill in this case is to foreclose a mortgage given by Uzziel P. Smith to Asahel H. Heath, on the 5th day of February, 1870, to secure the note of Uzziel P. Smith, of even date, payable to the order of Asahel H. Heath, on or before the 25th day of February, 1875, for the sum of $45,000, with interest thereon at the rate of ten per cent per annum after February 15, 1870, payable semi-annually. Embraced in the mortgage were lots 6, 7, 8, 9 and 10, and the north half of the south half of lot 5, in block 3, in Ellis' first, or west, addition to Chicago. Subsequently the mortgagor made what is known as the "Aldine Square subdivision" of the mortgaged premises. A plat of this subdivision was properly acknowledged by the mortgagor, was certified by the surveyor who did the work, was approved by the board of public works of the city, and was recorded in Cook county, where the property is situated. In the center of the plat is shown a square, called "Aldine Square." Most, if not all, of the lots of this subdivision front on "Aldine Square," with an alley in the rear. All of the lots fronting on this square, described therein as represented on the plat, had been released by the mortgagee, so that all the property described in the mortgage was in fact released before the bill was filed, except the alleys and "Aldine Square," shown on the plat. As complainant does not ask a decree of foreclosure that would embrace any of the alleys shown on the plat, the controversy relates exclusively to "Aldine Square." On the hearing in the Superior Court a decree was passed giving complainant a foreclosure of his mortgage as to "Aldine Square," and in case the sum found due him on the note secured was not paid by a day fixed, it was ordered the property be sold, as is usual in such cases. That decree was affirmed in the Appellate Court, and defendants bring the case to this court on appeal.

Prior to the making of the mortgage it seems complainant and Smith were joint owners of the property. It had been bought on joint account, with a view to speculation, and it was agreed complainant should have back his investment, with an agreed amount as for profits. It was to secure the sums coming to him the note and mortgage were taken. The previous relations of the parties to the property afford, in some degree at least, an explanation of their subsequent conduct in regard to it.

It will be noticed the mortgage contains an express condition in case the mortgagor should at any time subdivide the premises into lots, of as near equal depth as may be, so as to make in all one thousand feet, or thereabout, frontage of the same, complainant would, at his request, release from the mortgage any one or more of such lots, upon payment to him of $60 per front foot. In the summer of 1874 Smith did subdivide the premises into lots. All the requirements imposed by the statute upon proprietors owning the fee, in regard to laying out an addition to a town or city, seem to have been observed by the mortgagor. The plat made by the surveyor had attached thereto an acknowledgment of the proprietor, the certificate of the surveyor stating he had subdivided the premises into "park, lots and alleys, which are correctly represented on the annexed plat under the title of Aldine Square subdivision," the approval of the board of public works, and the certificate of the recorder the plat had been filed in his office June 5, and recorded August 5, 1874. Near the center of the property surveyed is an oblong square, marked on the plat "Aldine Square," with the word "private" written underneath. Otherwise this square, as represented on the plat, is blank. No public streets or drives are shown on it. Looking on the plat, it is seen all the lots front on this square, with an alley of about the usual width in the rear, enclosing the square on three sides, the other side being bounded by Vincennes avenue, a public street. Except over

the square there was no way of gaining access to the front of these lots. The lots appear to abut on the line of the square. Back of the line of the square, distant twenty feet, is a dotted line, marked "building line."

In 1875 the mortgagor made what is called a re-subdivision of the mortgaged premises, under the title of "Aldine Square re-subdivision." All the forms observed in making the original subdivision were regarded in making the re-subdivision. Both plats are identical, except on the latter one "Aldine Square" is marked "public," and a public drive is shown around the square in front of the lots, with a single entrance near the center, on the line of Vincennes avenue. It may be the certificate of the surveyor is not entirely accurate as to the description of the property subdivided, but that is a matter of no consequence, as the plat, which is a matter of record, corresponds exactly with the land actually surveyed.

It is seen complainant expressly consented to a subdivision of the mortgaged premises into lots whenever the mortgagor should deem it advisable. Consenting to a subdivision of the property into lots, implies a consenting to laying out the usual streets and alleys, otherwise the contract would be impracticable of execution, and would involve the absurdity of subdividing a tract of land into lots without any means of ingress or egress. The contract must have a reasonable construction in this regard. Complainant also agreed to release, on the request of the mortgagor, any one or more of such lots on payment to him of a stipulated price per front foot. Giving to this part of their contract a reasonable construction, it must be read as an agreement also to release his mortgage on the streets in front of the lots, that the right of ingress and egress might be secured. Construing the contract otherwise, it would be of no advantage whatever to the mortgagor. Residence lots without streets, would of course be valueless and unsalable. Releasing the lot, unless it released also the street in front of it, would be of no use to

the purchaser. Had nothing more been done in subdividing the mortgaged premises into lots than also laying out streets and alleys of the customary and usual width, it is hardly probable it would be insisted that releasing all the lots in the subdivision did not also release that portion of the mortgaged premises designated as streets and alleys. The concession of counsel is to that extent.

The contract, as expressed in the mortgage, would ordinarily be understood, if the mortgagor made a subdivision of the property into lots it should be done in the usual mode, by making streets in front of the lots of the common or usual width. It is said the premises were not subdivided in accordance with the contract between the parties. That may be conceded. Instead of adopting the usual plan of making the lots front on streets, the mortgagor, in his subdivision of the property, made the lots front on a court, or oblong square. There was no easement to the front of the lots for the benefit of parties that might become purchasers, except over the square or court. No doubt this was a wide departure from any fair interpretation of the contract, but it was entirely competent for complainant to consent to any subdivision of the property that might be thought to be for the best interests of himself and the mortgagor. It is quite satisfactorily proven complainant did yield his assent to the mode adopted in making the first plat of the ground, or what is called the "Aldine Square subdivision." Before it was done he knew the premises were to be subdivided in that way. It is conceded he saw the plat before it was recorded, and it does not appear he made any objections to the plan or mode adopted. So far from objecting to the plan of making the subdivision by the mortgagor, he adopted it by acting upon it, and making releases of lots, under his contract to do so, by the numbers by which they were designated on the plat.

It is not quite so clear complainant knew of the "Aldine Square re-subdivision" at any time before it was recorded.

On this point in the case the evidence is conflicting. Complainant denies all knowledge of the plat before it was recorded. But it is proven he made releases of lots by reference to the "Aldine Square re-subdivision." That, he says, was done inadvertently, without noticing the description whether the lots were described as being in "Aldine Square subdivision," or in "Aldine Square re-subdivision." It was his understanding he was making the releases of lots as numbered on the original or first plat. Were this a vital point in the case, it would present a case whether his inattention in this respect was excusable. Parties taking releases without explanation, and it is not claimed any was given, would be justified in relying on what he did as what he intended to do. Parties accepting releases of lots as having been made by the plat of "Aldine Square re-subdivision," ought not to suffer on account of his inattention, in case loss is to fall on either party.

No great importance, however, need be attached to the difference in the plats made by the mortgagor, and for that reason no inquiry will be entered upon as to his right to make the re-subdivision of the premises. Under the statute of this State there may be a dedication or donation of land to the public or to any individuals, and as reference is had to one plat or the other, the donation in this case is either a donation to the abutting lot owners or to the public. It may be assumed that if Smith had been the owner of the fee, unincumbered, the making of the first plat under the statute would have been a donation of Aldine Square to the abutting lot owners, and after sales of lots by the plat it would have been irrevocable. The word "private" on the plat simply indicates the square was donated for the use of individuals that might thereafter become lot owners abutting on the square, and not to the general public. As has been seen, individuals under the statute may be the recipients of a donation.

No reason is perceived why there may not be an easement in favor of individuals, or the public, over a square like this, as over any ordinary street. That is precisely what must have been intended in the donation of the square in this case. Because it was to be a place of beauty in front of dwellings to be erected, it is none the less an easement, in the strictest sense of the term. A street wider than usual, and made attractive by the planting of trees, shrubbery and flowers on the margin, is an easement in favor of either the public or individuals. The same may be said as to a square. What possible difference can it make whether the land donated for an easement is in the form of a narrow strip, or in the form of an oblong or perfect square? One may be more beautiful than the other, but it is still an easement. There is no reason why the square in this case may not be regarded precisely as an ordinary street would be,—as affording an easement in favor of parties interested in the abutting lots.

The question of most difficulty arising in the case is whether complainant is bound by the donation of the square, either to individuals or the public, that was unquestionably attempted to be made by the mortgagor. It seems clear that he is. It matters not how he is bound,—whether by acts equivalent to a positive donation of the property, or by way of estoppel.

It is erroneous to assume the dedication of "Aldine Square" is an alleged dedication by a mortgagor. No such thing is insisted upon, and it is not understood a mortgagor could make a donation of any part of the mortgaged premises, to the public or otherwise, unless the mortgagee should join with him. This case presents a donation of a part of the mortgaged premises, to individuals or the public, for an easement, with the implied or express consent of the mortgagee. Certainly that may be done by the joint action of both, as in them is vested the fee and the equitable estate. Express consent was given by the mortgagee to a subdivision of the mort-

gaged premises by the mortgagor into lots, for the purposes of making sales, and by a reasonable construction of the contract that is equivalent to consent the usual streets and alleys should be laid out and dedicated to the public. No decree is asked as to that portion of the property embraced in the alleys, which accords with this reasonable interpretation of the contract. As respects the departure from a correct interpretation of the contract in laying out a square for an easement, instead of a common street, as before remarked, complainant, before it was done, knew such a departure would be made, and as no objections were interposed then or at any other time, his assent might reasonably be implied. It follows, then, the subdividing of the mortgaged property, and making a plat of it with a view to sell lots by it, is the joint action of both the mortgagor and the mortgagee, in whom is the whole title to the property donated for an easement to individuals or the public. It is true the plat is not acknowledged by the mortgagee, but it was made by the mortgagor under a contract with him it might be made, and with whom he advised concerning the making of it, and having afterwards acted on it by making releases by it, he must therefore be as effectually concluded by it as if it had been acknowledged by him. The principle asserted was applied in *Smith* v. *Flora*, 64 Ill. 93. In all their subsequent dealings with the property, complainant recognized the plat as having been properly made, and in *Gridley* v. *Hopkins*, 84 Ill. 528, recognition of the plat by making sales of lots by it was held to make the plat obligatory upon the plaintiff, who had not previously consented to the making of it. The case in hand is a much stronger one for the application of the rule than the one cited. It is not necessary, to constitute a dedication, the grant should be in writing. It might be to a body incapable of taking by grant, in which case a writing to manifest the intention would be impracticable. Nor is the intention, so essential to every donation, wanting in this case. The alleys

were to give an easement to the rear, and the square to the front, of the lots. That intention is conceded as to the alleys. Why may it not be affirmed as to the square? It would be an unreasonable construction to put on the transaction, to hold the square was reserved as private property, on which buildings for manufacturing and other purposes might be erected within twenty feet of the building line of buildings to be erected on the lots. That would utterly destroy the value of the lots for residence property, and no such folly will be imputed to men of any business experience. The improvements made on the square are inconsistent with the idea it was private property, or was ever to be used for building purposes. The theory of dedication by both mortgagor and mortgagee is very much strengthened by the fact it was stipulated the lots to be carved out of the property should have a thousand feet, or thereabout, frontage, and that complainant was to release lots on payment to him of $60 per front foot, showing it was the expectation of the parties the mortgage indebtedness would be paid from the sale of lots, and that would operate as a release of that portion of the property devoted to alleys and other public grounds. Had complainant adhered to the contract, and sales had been effected in a reasonable time, the result anticipated might have been realized; but he chose to release lots without insisting upon a compliance with the terms of the contract, and that was a matter of his own concern.

Considering all the facts, this would seem to be a case for the application of the doctrine of *estoppel in pais*. It is the assertion of no new principle, but the practical application of a doctrine often resorted to by courts in the maintenance of right and justice, and to defeat the assertion of claims it would be inequitable to allow. Such a defence arises out of matter *in pais*, and may consist of acts or declarations, or both, of the party against whom the doctrine is invoked. It will be seen the claim now put forth to a mortgage lien on

the premises in controversy is at variance with the acts of complainant concerning it, and which induced the action of other parties, who would be injuriously affected if he is allowed to maintain his demand. A concise statement of facts will show how clearly the case comes within the rule stated. It is admitted complainant knew "Aldine Square," although marked "private" on the plat, was to be improved and ornamented, as is usual in the case of a public park. That would have been a useless expenditure of money had it not been intended as an easement and pleasure grounds in front of the dwellings to be erected on the lots of the subdivision. Not infrequently he saw Smith's plans for dwelling houses around the square, and looked them over and discussed them with him. The testimony of Smith is uncontradicted that complainant never expressed any dissent, but on the contrary was in harmony with what was being done. With a view to enable Smith to borrow money on them, complainant released from his mortgage all the lots fronting on Aldine Square by the description given to them on the plat. That was done, and with the money borrowed on the lots, and perhaps other funds, the lots and park were improved. Every lot fronting on the square had a brick dwelling house with a stone front erected thereon, with the exception of three lots, on which a valuable stable was built. A sum of over $25,000 was expended in the erection of dwelling houses, and in the improvement of the square, walks and drives, which was elaborately done, with substantial ornamentation. All this complainant saw at frequent short intervals while it was being done, and his silence concerning it was a tacit approval. What was being done evidenced design and intention. This was evident to any one, and more especially to one interested, as was complainant. Whatever is created or constructed manifests design, and is easily read by any one at all observant. Certainly no one familiar with what was being done in

and about this square did not understand its meaning and
purpose.    Had the mortgagor and the mortgagee set forth in
a written instrument their purpose in the ornamentation of
this little park, it would not have been better understood
than it was by their acts done.    While the events to which
attention has been directed were transpiring, was the time, if
the mortgagee, who had consented to the subdivision of the
mortgaged property into lots for sale, did not intend to keep
faith with purchasers whom his acts had induced to buy lots
fronting on the square, when he ought to have made known
to them the claim he now insists upon, in time to have pre-
vented loss on their investments.    The releases of lots from
the operation of complainant's mortgage were made with the
understanding and confident belief the mortgagor would be
able to effect sales of lots to persons wishing to secure desira-
ble homes.    As was anticipated would be the case, sales of
lots were effected. It was known to complainant persons
were induced to buy at greatly enhanced prices, on account
of the beauty of the location,—houses fronting on the square
or court.    Neither complainant nor any one else was ignor-
ant of the fact that unless the square was kept open as a
park, the lots fronting on it would not be so desirable as
places for residences.    As complainant did not then make
known the claim he now insists upon, since others have
invested large sums of money in the lots, under the confident
belief his silence indicated that the square would be forever
kept open as an easement and park for their benefit, he
ought not now to be permitted to assert he has a mortgage
lien on the square that would require the outlay of a large
sum of money to remove.

Great stress is laid on the fact complainant's mortgage was
a matter of record, as affording notice to all subsequent pur-
chasers of the lien created by it.    An inquiry suggested by
counsel in this connection is, did subsequent purchasers and
incumbrancers concern themselves about the lien of the

mortgage on the property now sought to be foreclosed, or did they carelessly neglect to see whether the mortgage was properly released or not? It is proven some of the parties making purchases relied on legal advice, to the effect a release of the mortgage on the lots by reference to the plat was also a release of the mortgage lien upon that portion of the mortgaged property included in the square and alleys, for easements in favor of the lot owners. Of course the advice taken only goes to the good faith of the transactions, but there are cases entitled to consideration that sustain the position taken. The case of *Hague* v. *Inhabitants of Hoboken*, 23 N. J. 354, is a case where the mortgagor laid out the mortgaged premises in lots and blocks, with streets, and as to him it was held, as the rule is, it was a dedication of the streets to public use. Afterwards the mortgagee released some of the lots from the lien of the mortgage, which was regarded by the court as a release of the land to the middle of the street, and hence a release of the right of way over the dedicated street that was appurtenant to the lots. Remarking upon what the mortgagee had done, the court said the legal effect of his release was also to release the mortgage as to the streets, and the reasons assigned are, that in making the release he described the lots by their numbers laid down on the map, and that a release of the lots would have been of little use to the purchasers if the mortgagee could afterwards have shut up the street by which access to them could be had. The rule declared is a reasonable one, and has its application to the facts of this case. If the first plat was not a statutory dedication of "Aldine Square" to the corporation, the fee remained in the proprietors making the plat, subject to an easement, and under the decision of this court a release, which in this case would have the force of a conveyance, of the lot, carried a release of the fee to the center of the square set apart for an easement. On the other hand, if it could be treated as a dedication to the corporation, it was for the use of the public

as well as for the adjacent lot owners.   Having recognized
the plat by approving of it as a proper subdivision of the
property, which the mortgagor was authorized to make, and
by executing releases by it to all lots fronting on the square,
complainant was as effectually bound by the plat as was
the mortgagor, and in either case there was a release of the
square and the alleys of the subdivision for the benefit of lot
owners.

It is inconceivable that parties having any business sense
would buy lots fronting on a square or park, with no street
between them, unless with the positive assurance they were
buying with them the privilege of the square or park.   That
they certainly had in this case, from the acts of both the
mortgagor and the mortgagee.   Complainant, when he re-
leased his mortgage on the lots by their numbers on the
plat, must have known parties were investing in them on
the understanding he had released his mortgage on the
square itself, and on every principle of law he ought to be
estopped to deny the legal effect of what he induced others
to believe.

The judgment of the Appellate Court will be reversed, and
the cause remanded to that court, with directions to reverse
the decree of the circuit court, and dismiss the bill for want
of equity.

*Judgment reversed.*


Mr. JUSTICE WALKER:   I am unable to concur in this judg-
ment.