2015 IL App (3d) 130379
Consolidated with 3-13-0380

Opinion filed May 15, 2015

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2015

| | | |
|---|---|---|
| REPUBLIC BANK OF CHICAGO, | ) | Appeal from the Circuit Court |
| | ) | of the 12th Judicial Circuit, |
| Plaintiff-Appellant, | ) | Will County, Illinois. |
| | ) | |
| v. | ) | |
| | ) | |
| THE VILLAGE OF MANHATTAN, | ) | |
| | ) | |
| Defendant-Appellee | ) | |
| | ) | |
| (Lakeside Towns at Liberty Center | ) | Appeal No. 3-13-0379 |
| Development, LLC, Lawerence W. Sisk, | ) | Circuit No. 12-CH-1877 |
| Jennell M. Sisk, Michael K. Gallagher, | ) | |
| Eastern and Smith Manhattan, LLC, | ) | |
| Gallagher Homes, LLC, Tramore | ) | |
| Townhome Associations, Inc., | ) | |
| Commonwealth Edison Company, | ) | |
| Ameritech Corporation, Illinois Bell | ) | |
| Telephone Company, Unknown Owners, | ) | |
| and Nonrecord Claimants, | ) | The Honorable |
| | ) | Barbara Petrungaro, |
| Defendants). | ) | Judge, Presiding. |

| | | |
|---|---|---|
| REPUBLIC BANK OF CHICAGO, | ) | Appeal from the Circuit Court |
| | ) | of the 12th Judicial Circuit, |
| Plaintiff-Appellant, | ) | Will County, Illinois. |
| | ) | |
| v. | ) | |
| | ) | |
| THE VILLAGE OF MANHATTAN, | ) | |
| | ) | |

<table>
<tr><td>Defendant-Appellee</td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td>(Eastern and Smith Manhattan, LLC,</td><td>)</td><td></td></tr>
<tr><td>Lawrence W. Sisk, Jennell M. Sisk,</td><td>)</td><td></td></tr>
<tr><td>Michael K. Gallagher, Route 52 Manhattan,</td><td>)</td><td></td></tr>
<tr><td>LLC, E&S Development North, LLC,</td><td>)</td><td></td></tr>
<tr><td>Krause Construction, LLC, Beary</td><td>)</td><td></td></tr>
<tr><td>Landscaping, Inc., Zausa Development</td><td>)</td><td>Appeal No. 3-13-0380</td></tr>
<tr><td>Corporation, Stonegate Duplex Association,</td><td>)</td><td>Circuit No. 12-CH-2045</td></tr>
<tr><td>Stonegate Phase I Homeowners</td><td>)</td><td></td></tr>
<tr><td>Association, Stonegate Phase II</td><td>)</td><td></td></tr>
<tr><td>Homeowners Association, Stonegate Phase</td><td>)</td><td></td></tr>
<tr><td>III Homeowners Association, Stonegate</td><td>)</td><td></td></tr>
<tr><td>Phase IV Homeowners Association,</td><td>)</td><td></td></tr>
<tr><td>Stonegate Phase V Homeowners</td><td>)</td><td></td></tr>
<tr><td>Association, Commonwealth Edison</td><td>)</td><td></td></tr>
<tr><td>Company, Ameritech Corporation, Illinois</td><td>)</td><td></td></tr>
<tr><td>Bell Telephone Company, Nicor Gas</td><td>)</td><td></td></tr>
<tr><td>Company, Kraus Cable Television Systems,</td><td>)</td><td></td></tr>
<tr><td>Lakeside Towns at Liberty Center</td><td>)</td><td></td></tr>
<tr><td>Development, LLC, Unknown Owners, and</td><td>)</td><td></td></tr>
<tr><td>Nonrecord Claimants,</td><td>)</td><td>The Honorable</td></tr>
<tr><td></td><td>)</td><td>Barbara Petrungaro,</td></tr>
<tr><td>Defendants).</td><td>)</td><td>Judge, Presiding.</td></tr>
</table>

_____

JUSTICE LYTTON delivered the judgment of the court, with opinion.
Justice O'Brien concurred in the judgment and opinion.
Justice Carter dissented, with opinion.

_____

**OPINION**

¶ 1        Plaintiff Republic Bank of Chicago filed two separate complaints against multiple

defendants to foreclose on roads and outlots contained in two failed subdivisions located in the

Village of Manhattan (Village). The Village filed motions to dismiss the complaints, arguing

that the roads and common areas had been dedicated to the Village. The trial court granted the

Village's motions to dismiss. On appeal, Republic Bank argues that (1) the roads and common

areas were not properly dedicated to the Village, and (2) even if they were properly dedicated,

Republic Bank is still entitled to foreclose on them. We affirm.

2

¶ 2    In 2006, Eastern & Smith Manhattan, LLC (Eastern & Smith), purchased 134.51 acres of land in the Village of Manhattan with plans to construct Stonegate Subdivision. Eastern & Smith obtained the funds to purchase the property from Republic Bank, which held an initial mortgage on the property in the amount of $8,351,646.66. The initial mortgage was executed in July 2006, but was later amended and modified on six occasions. Republic Bank recorded a junior mortgage on the property on February 26, 2007.

¶ 3    In preparation for development, Stonegate was subdivided and platted in five phases from August 30, 2007, to April 14, 2009. The plats showed 352 residential lots, as well as streets and common areas. The plats for Phases 1 through 3 were recorded on August 30, 2007. The plat for Phase 4 was recorded on December 6, 2007, and the plat for Phase 5 was recorded on April 14, 2009. Republic Bank signed each of the plats under a portion of the plat entitled, "Mortgagee's Certificate," which states: "This is to certify that Republic Bank of Chicago as Mortgagee *** consents to the recording of the subdivision as herein shown."

¶ 4    Each plat identifies roads with names, followed by "(hereby dedicated)" and "(heretofore dedicated)," as well as land identified as easements for stormwater draining and detention, public utility and drainage, and surface overland flow. Each plat contains provisions stating that stormwater draining and detention easements, public utility and drainage easements, and surface overland flow easements are "reserved for and granted to the Village of Manhattan." The plats also contain a "Public Easement" provision, which states: "A public easement of ingress, egress, and the use and enjoyment of the Village of Manhattan over Outlots 5, 6, 7, 8, 9 and 10 is hereby reserved, granted and dedicated."

¶ 5    Republic Bank released its lien on three lots located in Phase 1 of Stonegate Subdivision and recorded releases for those lots on October 29, 2007. The releases refer to the lot numbers contained in the plat for Phase 1 of the subdivision.

¶ 6    In 2007, Lakeside Towns at Liberty Center Development, LLC (Lakeside Towns), purchased 23 acres of land in the Village of Manhattan with plans to construct Tramore Subdivision. Lakeside obtained funds to purchase the property from Republic Bank, which held a mortgage on the property in the amount of $7,105,000. Republic Bank recorded its mortgage in February and May 2007.

¶ 7    In preparation for development, a final planned unit development plat of subdivision was recorded in August 2007, showing 26 residential lots, containing 150 townhomes, and areas designated for roadways and common areas. Republic Bank signed the plat for Tramore Subdivision under a section entitled, "Mortgagee's Certificate," which states: "This is to certify that Republic Bank of Chicago as Mortgagee *** consents to the recording of the subdivision as herein shown."

¶ 8    The plat for Tramore Subdivision identifies general easements "granted to the Village of Manhattan," and easements for stormwater retention, public utility and drainage, and emergency access. The plat states that all stormwater retention easements, public utility and drainage easements and emergency access easements "are reserved for and granted to the Village of Manhattan." The plat also contains a provision for "Public Easement," which states: "A public easement for ingress, egress, public utilities and storm water detention and drainage, and the use and enjoyment of the Village of Manhattan over lots 27-30, inclusive is hereby reserved, granted and dedicated."

4

¶ 9 Republic Bank released its lien on one lot in Tramore Subdivision and recorded its release on April 13, 2010. The release refers to the lot number contained in the recorded plat for Tramore Subdivision.

¶ 10 By early 2011, both Eastern & Smith and Lakeside Towns had defaulted on their respective loans from Republic Bank. Although the infrastructure improvements had been started in each subdivision, they had not been completed, and the properties remained largely undeveloped.

¶ 11 In April 2012, Republic Bank filed complaints for partial foreclosure, seeking to foreclose on the roads and outlots of Stonegate Subdivision and Tramore Subdivision. The Village filed motions to dismiss the complaints, pursuant to section 2-619(a)(9) of the Code of Civil Procedure (Code) (735 ILCS 5/2-619(a)(9) (West 2012)), arguing that Republic Bank could not foreclose on the roads and common areas because they had been dedicated to the Village and Republic Bank had consented to their dedication. In October 2012, Republic Bank amended its complaint to include a count foreclosing on the roads and outlots of Stonegate Subdivision under its junior mortgage.

¶ 12 The trial court granted the Village's motions to dismiss, finding that the dedication of the roads and outlots in the plats and Republic Bank's acknowledgement of the plats amounted to "a conveyance in fee simple as donated to the public." Republic Bank filed motions to reconsider the trial court's orders dismissing their complaints. Thereafter, in February 2013, the Village board of trustees passed resolutions confirming and ratifying their acceptance of the streets and easements set forth in the plats for Stonegate Subdivision and Tramore Subdivision. The trial court denied Republic Bank's motions to reconsider.

¶ 13                                          ANALYSIS

¶ 14    Section 2-619 of the Code allows a litigant to obtain an involuntary dismissal of an action or claim based upon certain defects or defenses. See 735 ILCS 5/2-619 (West 2012). The statute's purpose is to provide litigants with a method for disposing of issues of law and easily proven issues of fact early in a case. See *Van Meter v. Darien Park District*, 207 Ill. 2d 359, 367 (2003); *Advocate Health & Hospitals Corp. v. Bank One, N.A.*, 348 Ill. App. 3d 755, 759 (2004). In a section 2-619 proceeding, the moving party admits the legal sufficiency of the complaint but asserts an affirmative defense or other matter to defeat the nonmoving party's claim. *Van Meter*, 207 Ill. 2d at 367.

¶ 15    Under subsection (a)(9) of section 2-619, a litigant may obtain an involuntary dismissal of an action if it is "barred by other affirmative matter avoiding the legal effect of or defeating the claim." 735 ILCS 5/2-619(a)(9) (West 2012). An "affirmative matter" is something in the nature of a defense which negates the cause of action completely. *Van Meter*, 207 Ill. 2d at 367. In ruling on a section 2-619 motion to dismiss, the court must construe all of the pleadings and supporting documents in the light most favorable to the nonmoving party. *Id*. at 367-68. On appeal, a dismissal pursuant to section 2-619 is reviewed *de novo*. *Id*. at 368.

¶ 16                                I. DEDICATION

¶ 17    A private party may make either a statutory or common-law dedication of property to a municipality or other entity. *First Illinois Bank of Wilmette v. Valentine*, 250 Ill. App. 3d 1080, 1091 (1993). Statutory dedications of property are governed by the Plat Act (765 ILCS 205/1.01 *et seq*. (West 2012)). *Bigelow v. City of Rolling Meadows,* 372 Ill. App. 3d 60, 64-65 (2007). Section 3 of the Plat Act provides that acknowledgement and recording of a plat shall be a conveyance in fee simple of such portions of the premises platted "as are marked or noted on such plat as donated or granted to the public." 765 ILCS 205/3 (West 2012).

¶ 18     In a statutory dedication, acknowledgement and recording of the plat constitutes a dedication and vests title to the dedicated property in the governmental body. *Road King Petroleum Products, Inc. v. Village of Wood Dale*, 23 Ill. App. 3d 181, 184 (1974); see also *Schwebl v. Seifer*, 208 Ill. App. 3d 176, 181 (1991) (a statutory dedication results in a conveyance of the dedicated portion in fee simple to the public).   To create a valid statutory dedication, the following two requirements must be satisfied: (1) the property owner must file or record a plat which marks or notes portions of the premises as donated or granted to the public, and (2) the public entity must accept the dedication. *Bigelow*, 372 Ill. App. 3d at 64.

¶ 19     The words on a plat indicate the intention of the dedicators. *Township of Jubilee v. State*, 405 Ill. App. 3d 489, 496 (2010).   A plat of subdivision that identifies roads as "(hereby dedicated)" shows a dedication and, at the same time, shows on its face the grantor's intent to donate the property to the public. *Water Products Co. of Illinois, Inc. v. Gabel*, 120 Ill. App. 3d 668, 672 (1983).   A plat of subdivision that labels property as "public" is a dedication of the property to public use. *In re Village of Mount Prospect*, 167 Ill. App. 3d 1031, 1036 (1988); see *Township of Jubilee*, 405 Ill. App. 3d at 496.

¶ 20     "Acceptance may be shown by any act with respect to the property claimed to be dedicated that clearly indicates an assumption of jurisdiction and dominion over it by the public authorities." *Id*. at 498.   Acceptance of a statutory dedication may be express or implied. *Id*. at 497.   An express acceptance may be shown by direct municipal action, including passing and recording an order, resolution or action accepting the dedication. *La Salle National Bank v. City of Chicago*, 19 Ill. App. 3d 883, 886 (1974).   An ordinance or resolution accepting a dedication may be passed after suit has been filed to establish ownership of the property. See *Village of Maxwell v. Booth*, 73 N.W.2d 177, 183 (Neb. 1955) (finding resolution passed by village board

7

of trustees to "open street" five months after village filed suit to establish ownership of street was one of several "clear and unequivocal acts of acceptance of the dedication by the village"); *Township of Middletown v. Simon*, 937 A.2d 949, 953-58 (N.J. 2008) (ordinance accepting dedication was timely where it was passed five months after township filed suit to establish dedication of property).

¶ 21     An implied acceptance may be deduced from acts of public authorities recognizing the existence of streets and treating them as public streets. *La Salle National Bank*, 19 Ill. App. 3d at 886. The acceptance of some platted streets raises the presumption of acceptance of all of the streets platted. *Id*. It is not necessary, in order to indicate acceptance of a dedication, for a city or village to make immediate use of the property. *Id*.; *Trustees of Schools v. Dassow*, 321 Ill. 346, 352 (1926). A village or municipality is permitted to wait a reasonable time for opening and improving its public streets, as its own resources and the public need may allow and require. *Id*.; *La Salle National Bank*, 19 Ill. App. 3d at 886. If there is no necessity, due to the general unoccupied character of the area, to improve the streets and common areas in question, it is not incumbent on a municipality to improve streets and public ways merely to establish acceptance of a dedication. *Id*. at 887. The unimproved condition of streets and common areas does not rebut the presumption of an implied acceptance by a public body. *Id*.

¶ 22     It is well settled that acceptance is timely if made before the offer to dedicate has been formally withdrawn or revoked by the dedicator. See *Dewey v. City of Chicago*, 274 Ill. 268, 275 (1916)*; Village of Joppa v. Chicago & Eastern Illinois R.R. Co.*, 51 Ill. App. 3d 674, 680 (1977)*; Pasco County v. Johnson*, 67 So. 2d 639, 642 (Fla. 1953)*; Hays v. Vanek*, 217 Cal. App. 3d 271, 283 (Cal. Ct. App. 1989); see also *Di Cioccio v. Town of Wethersfield*, 152 A.2d 308 (Conn. 1959) (town's acceptance 18 years after offer to dedicate was timely)*; Booth*, 73 N.W.2d

at 183-84 (finding "clear and unequivocal acts of acceptance of the dedication by the village over a period of years" 23 to 44 years after offer of dedication)*; West Center Congregational Church v. Efstathiou*, 215 A.D.2d 753 (N.Y. App. Div. 1995) (city accepted dedication of road by ordinance 42 years after offer to dedicate)*; Quacchia v. County of Santa Cruz*, 331 P.2d 216 (Cal. Ct. App. 1958) (county board of supervisors could accept offer to dedicate 15 years later after it initially rejected offer). In Illinois, a formal acceptance made over 30 years after an offer to dedicate was timely where no affirmative action was taken by the dedicator to withdraw the offer. See *Village of Joppa*, 51 Ill. App. 3d at 680.

¶ 23    All parties agree that the plats for Stonegate Subdivision and Tramore Subdivision were recorded and comply with the requirements of the Plat Act. However, Republic Bank (Bank), argues that (1) the face of the plat does not show an intent to donate the property for the public, (2) the Village's resolution expressly accepting the dedications was untimely, and (3) the Village failed to impliedly accept the dedications because the Village has not improved, maintained or used the roads or outlots in question.

¶ 24    Here, the plats for Stonegate Subdivision identify roads with names, followed by "(hereby dedicated)" and "(heretofore dedicated)." These designations show Eastern & Smith's intent to donate the property to the public. See *Gabel*, 120 Ill. App. 3d at 672. Furthermore, the plats for both subdivisions identify outlots as "public" and state that they are "hereby reserved, granted and dedicated" to "the use and enjoyment of the Village of Manhattan." The terms "public" and "dedicated" show Eastern & Smith's and Lakeside Towns' intentions to dedicate that property to the public. See *id*.; *Township of Jubilee*, 405 Ill. App. 3d at 496; *In re Village of Mount Prospect*, 167 Ill. App. 3d at 1036.

9

¶ 25    There is no question that the Village can accept the dedication through a resolution passed by its board of trustees. See *Hooper v. Haas*, 332 Ill. 561, 567 (1928); *La Salle National Bank*, 19 Ill. App. 3d at 886. Here, Eastern & Smith and Lakeside Towns made offers to dedicate various roads and outlots to the Village between 2007 and 2009. The Village expressly accepted those offers by resolution in 2013. At no time did Eastern & Smith or Lakeside Towns attempt to revoke or withdraw their offers to dedicate. Thus, the Village's acceptance was timely, and the dedications were complete in 2013. See *Dewey,* 274 Ill. at 275; *Village of Joppa,* 51 Ill. App. 3d at 680.

¶ 26    We disagree with the dissent's contention that the Bank's filing of the foreclosure complaint acted as a revocation of Eastern & Smith's and Lakeside Towns' offers to dedicate. Courts have held that once foreclosure is complete and the property is sold, an attempted dedication that has not been accepted is extinguished. See *H.A. Hillmer Co. v. Behr*, 264 Ill. 568, 577 (1914); *Western Fertilizer & Cordage Co. v. City of Alliance*, 504 N.W.2d 808, 814 (Neb. 1993); *Highland Beach Realty Co. v. Turner*, 139 So. 2d 467, 470 (Fla. Dist. Ct. App. 1962). However, no court has held that the mere filing of a complaint for foreclosure acts as a revocation of an offer to dedicate. Acceptance of a dedication can take place any time prior to foreclosure being completed. See *Turner*, 139 So. 2d at 470. Here, where the Village accepted the offers to dedicate after the Bank filed its foreclosure complaint but before a judgment for foreclosure was entered, the acceptance was timely and effective.

¶ 27    Moreover, the unimproved condition of the dedicated property does not establish a lack of implied acceptance since the area surrounding the streets and outlots has remained, for the most part, undeveloped land. Because of the general undeveloped character of the area, it was

10

not necessary for the Village to improve the streets and common areas to prove acceptance. See *La Salle National Bank*, 19 Ill. App. 3d at 886-87.

¶ 28 The Village satisfied both requirements necessary for a valid statutory dedication. The trial court did not err in finding that the roads and outlots depicted on the plats were dedicated to the Village, which held them in fee simple.

¶ 29 II. EFFECT OF DEDICATION ON MORTGAGEE

¶ 30 A mortgagor has no authority to dedicate land, as against the mortgagee, without the mortgagee's consent. *City of Alton v. Fischback*, 181 Ill. 396, 398 (1899); *Weills v. City of Vero Beach*, 119 So. 330, 332 (Fla. 1928). However, if the mortgagee assents to the dedication, it is bound by it. *Smith v. Heath*, 102 Ill. 130 (1882); see also *Phillips v. Arkansas Valley Interurban Ry. Co.*, 133 P. 429 (Kan. 1913) (where a plat is made with the consent and acknowledgement of the mortgagee, mortgagor's dedication is accomplished).

¶ 31 The mortgagee's assent will be implied where it recognizes the plat as having been properly made, sells lots pursuant to the plat and executes releases therefor. *Boone v. Clark*, 129 Ill. 466 (1889); *Smith*, 102 Ill. 130; see also *Samuel Nardone & Co. v. Bianchi*, 524 A.2d 1114, 1116 (R.I. 1987) ("when a plat is recorded with streets delineated thereon and lots are sold by reference to that plat, there is an incipient dedication of such streets inuring to the public"); *Weills*, 119 So. at 332 (" 'where the mortgagee is present at sales according to a plat and does not object then or afterward, his assent to the dedication of the streets indicated on the plat will be presumed' ") (quoting 18 C.J. *Mortgages* § 20 (1919))).

¶ 32 When a mortgagee executes and records mortgage releases on lots shown on a plat of subdivision, the mortgagee impliedly consents to the entire plat, including the streets shown thereon, and can no longer revoke its assent to dedication of the streets and alleys set forth in the

11

plat. See *Boone*, 129 Ill. at 483; *Smith*, 102 Ill. at 138, 142; see also *Weills,* 119 So. at 332 (mortgagee estopped from foreclosing on streets shown on plat where mortgagee stood by seeing lots sold according to the plat and releasing mortgage liens on those lots). The release any lots depicted in a plat is sufficient to estop the mortgagee from denying the validity of the dedication of all streets and common areas shown on the plat. See *Tower Development Partners v. Zell*, 461 S.E.2d 17, 21 (N.C. Ct. App. 1995); *Weills*, 119 So. at 332.

¶ 33　　　In *Smith*, our supreme court held that "[c]onsenting to a subdivision of the property into lots, implies a consenting to laying out the usual streets and alleys." *Smith*, 102 Ill. at 138. Otherwise, the lots would be "valueless and unsalable" because there would be no means of ingress or egress to them. *Id*. "Releasing the lot, unless it released also the street in front of it, would be of no use to the purchaser." *Id*. at 138-39. When a mortgagor subdivides the mortgaged premises into lots and lays out streets and alleys, a mortgagee's release of lots in the subdivision also releases that portion of the mortgaged premises designated as streets and alleys. *Id*. at 139. A mortgagee's release of lots from its mortgage would be of little use to purchasers if the mortgagee could later "shut up the street by which access to [the lots] could be had." *Id*. at 146. By recognizing the plat created by the mortgagor and executing releases to lots set forth in the plat, the mortgagee is effectually bound by the plat, including the streets and common areas depicted therein. *Id*. at 147.

¶ 34　　　When lots are sold with clear reference to a plat, the purchasers are entitled to rely on the plat, including the streets and other public places indicated thereon. *Saunders v. City of Chicago*, 212 Ill. 206, 215 (1904). Streets and alleys delineated on a plat are presumed to add value to all of the lots embraced in the general plan, and purchasers invest their money on the assurance that such access ways will belong to the public. *Cassell v. Reeves*, 265 S.W.2d 801, 802 (Ky. Ct.

12

App. 1954). The purchasers of lots have the right to have streets indicated in the plat remain open forever. *Id.* Such a right is irrevocable because streets are valuable to lot owners. See *Saunders,* 212 Ill. at 214; *Smith*, 102 Ill. at 143; *Clark v. City of Providence*, 10 R.I. 437, 440 (R.I. 1873) (a street is generally taken into consideration in the sale of lots and "adds to the value of the lots"). The absence of streets would "utterly destroy" the value of subdivided lots and injure property owners who purchased lots relying on the streets depicted in a plat. *Smith*, 102 Ill. at 143-44.

¶ 35    Here, Republic Bank executed and recorded mortgage releases on lots shown on the plats for each subdivision. The releases specifically referred to the lots by the lot numbers shown on the plats. By executing and recording these releases, Republic Bank impliedly consented to the entire plats, including the streets and outlots shown thereon. See *Boone*, 129 Ill. at 483; *Smith*, 102 Ill. at 138, 142. Once Republic Bank executed the mortgage releases, it could no longer revoke its assent to the dedication of the streets and outlots set forth in the plat. See *Smith*, 102 Ill. at 138, 142; see also *Weills*, 119 So. at 332; *Zell*, 461 S.E.2d at 21. Republic Bank cannot now deny the validity of the dedication of the streets and common areas shown on the plats, and the trial court properly dismissed Republic Bank's complaints seeking foreclosure of that property.

¶ 36                                  CONCLUSION

¶ 37    The judgment of the circuit court of Will County is affirmed.

¶ 38    Affirmed.

¶ 39    JUSTICE CARTER, dissenting.

¶ 40    I respectfully dissent from the majority's decision in the present case. Unlike the majority, I would find that the trial court erred in granting the Village's motion to dismiss

13

Republic Bank's foreclosure complaints. I would, therefore, reverse the trial court's ruling and remand this case for further proceedings.

¶ 41    I disagree with the majority's conclusion and analysis in the instant case for two reasons. First, I would find that the plats of the two subdivisions failed to establish the requisite donative intent necessary for a statutory dedication to arise because the face of the plats did not clearly and unequivocally establish that the owners of the subject property intended to donate legal title in fee simple to the property to the Village. See *Reiman v. Kale*, 83 Ill. App. 3d 773, 776 (1980); *Bigelow*, 372 Ill. App. 3d at 64-67. To the contrary, the Tramore plats granted only easement rights to the Village and clearly and specifically stated that the areas in question were to remain private property, which is the exact opposite of the donative intent necessary for a statutory dedication. As for the Stonegate plats, they were ambiguous as to any rights and interests that were being granted to the Village. The use of the phrases "hereby dedicated" or "heretofore dedicated" on the Stonegate plats next to or under the name of each road was not enough, in my opinion, to establish that the owner clearly intended to convey legal title in fee simple to those areas in Stonegate to the Village. See *Reiman*, 83 Ill. App. 3d at 776 (the mere fact that the subdivision plat indicated the presence of streets, which were generally considered public places, was not sufficient to establish donative intent as necessary for a statutory dedication, since there was no general prohibition against private streets); *Bigelow*, 372 Ill. App. 3d at 66-67 (same). It is equally possible that the owner intended to dedicate the roads only for the private use of the residents of the subdivision and did not intend to create any interest in the public. See *id*.

¶ 42    The second reason I disagree with the majority's conclusion and analysis in the present case is because I would find that the evidence was insufficient at this stage of the proceedings to establish that the Village had accepted the dedication of the subject property. The Village

14

presented no credible evidence whatsoever to establish that an acceptance of the dedication was made in this case prior to the filing of the foreclosure action. There was no credible evidence to suggest that the Village had improved or maintained the subject property, that the subject property had been used in any way by the Village or the public, or that the subject property had been added to Village maps or removed from the tax rolls. The subdivision developments had been abandoned, there was no one living on the properties, and there was no credible evidence to suggest that the subject property was of any special benefit or necessity to the public so as to require that only slight evidence would be necessary to prove acceptance. See *H.A. Hillmer Co.*, 264 Ill. at 577. Although the Village passed a postjudgment resolution accepting the dedication, the resolution could not have had that effect because the mortgage complaint had already been filed, which effectively revoked the offer to dedicate the subject property. See *id*. at 577-78 (foreclosure of trust deed amounted to a practical revocation of the offer to dedicate the property and of the right to accept the dedication).

¶ 43 Because the purported dedication in this case was not a statutory dedication, the warranty of section 3 of the Plat Act does not apply to vest legal title to the subject property in the Village. See 765 ILCS 205/3 (West 2012); *Bigelow*, 372 Ill. App. 3d at 64. Therefore, the Village's motion to dismiss, which was based solely upon that argument, should have been denied. I respectfully dissent from the majority's decision, which found to the contrary. I would reverse the trial court's order, granting the Village's motion to dismiss Republic Bank's foreclosure complaints, and would remand this case for further proceedings in the trial court.