2017 IL App (2d) 160601
No. 2-16-0601
Opinion filed May 31, 2017

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| J&A CANTORE, LP, | ) | Appeal from the Circuit Court |
| | ) | of Du Page County. |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | No. 14-CH-1613 |
| | ) | |
| THE VILLAGE OF VILLA PARK and THE | ) | |
| CITY OF ELMHURST, | ) | |
| | ) | |
| Defendants | ) | Honorable |
| | ) | Paul M. Fullerton, |
| (The City of Elmhurst, Defendant-Appellee). | ) | Judge, Presiding. |

JUSTICE BIRKETT delivered the judgment of the court, with opinion.
Presiding Justice Hudson and Justice Hutchinson concurred in the judgment and opinion.

**OPINION**

¶ 1    Plaintiff, J&A Cantore, LP, appeals the judgment of the circuit court of Du Page County dismissing counts III and IV of its complaint against defendant, the City of Elmhurst (Elmhurst), seeking to eject Elmhurst from a disputed portion of real property (disputed property). On appeal, plaintiff contends that the trial court erred in concluding: (1) that there had been either a statutory or a common-law dedication of the disputed property for public use as a street; or (2) that Elmhurst accepted the dedication of the disputed property. Plaintiff further contends that the trial court erred: (3) in determining that the disputed property was subject to public use. We affirm.

¶ 2                                    I. BACKGROUND

¶ 3    The disputed property is a strip of property along the eastern side of the property commonly known as 711 South Route 83, in Villa Park, Illinois (plaintiff's property). The disputed property is 58 feet wide, east to west, and extends north and south along the length of plaintiff's property. The western 25 feet of the disputed property lies in the Village of Villa Park (Villa Park);[1] the eastern 33 feet of the disputed property lies in Elmhurst. Beginning sometime in the 1980s, the then-owner of plaintiff's property erected a fence that ran parallel to the eastern lot line of plaintiff's property, but was located 58 feet to the east of the lot line, thereby encompassing the disputed property into an enclosure that included plaintiff's property and the disputed property.

¶ 4    On January 1, 2014, plaintiff obtained plaintiff's property via a trustee deed from the previous owner. Plaintiff alleges that it is the fee simple owner of plaintiff's property along with the disputed property. After plaintiff obtained plaintiff's property, it maintained the fence enclosing the disputed property and stored vehicles and trailers on the disputed property. On April 1, 2014, Elmhurst removed the fence and erected a new fence 58 feet to the west of the old fence, along the lot line of plaintiff's property. On September 2, 2014, Villa Park notified plaintiff that it intended to remove the vehicles and trailers that plaintiff had been storing on the disputed property.

¶ 5    On September 4, 2014, plaintiff filed a four-count complaint against Villa Park and Elmhurst. Counts I and II were directed against Villa Park and are not at issue in this appeal. Counts III and IV were directed against Elmhurst; count III sought ejectment of Elmhurst from

_____

[1] The Village of Villa Park is not a party to this appeal.

the disputed property and count IV sought an injunction against Elmhurst to prohibit it from using the disputed property. Plaintiff grounded its legal theories on a claim that it had gained title to the disputed property through adverse possession.

¶ 6 On November 14, 2014, Elmhurst filed a motion to dismiss the counts of plaintiff's complaint pertaining to it. See 735 ILCS 5/2-619 (West 2014). Elmhurst alleged that there was an affirmative matter that defeated plaintiff's claims, namely, that the disputed property was held by Elmhurst for public use, which meant that plaintiff could not adversely possess the disputed property. In support, Elmhurst attached affidavits and exhibits purporting to illustrate the creation and dedication of the disputed property as a public street, which Elmhurst had accepted.

¶ 7 Specifically, the affidavit of Peter Piet, Elmhurst's geographic information system specialist, laid out some of the circumstances regarding plaintiff's property and the disputed property. Piet averred that plaintiff obtained title to plaintiff's property by way of a January 1, 2014, trustee deed, which, on March 14, 2014, was recorded in Du Page County. According to Piet, plaintiff's property was legally described using references to lots 194, 195, 196, and 197 in "Robertson and Young's 3rd Spring Road Addition to Elmhurst" (3rd Spring Road Addition). According to a plat recorded on August 19, 1910, the 3rd Spring Road Addition was a subdivision located in "Section 10 and 11, Township 39 North, Range 11, East of the Third Principal Meridian." A certified copy of the plat was attached to Piet's affidavit.

¶ 8 The plat of the 3rd Spring Road Addition shows a 25-foot-wide roadway running north and south along the eastern boundaries of lots 189 through 198. The roadway is currently located within the corporate boundaries of Villa Park. Further, as is pertinent here, the roadway appears to consist of the western 25 feet of the disputed property. The roadway is not named on the plat of the 3rd Spring Road Addition.

¶ 9    A plat recorded on March 10, 1925, depicts territory known as the "H.O. Stone & Company's Spring Road Addition to Elmhurst" (H.O. Stone Addition). The plat depicts a 33-foot roadway denominated as "West Avenue." West Avenue is located in Elmhurst and runs north and south, next to the western 25 feet of the disputed property and along the western boundary of lots in the H.O. Stone Addition. As pertinent here, West Avenue comprises the eastern 33-foot-wide portion of the disputed property. A certified copy of the plat of the H.O. Stone Addition was attached to Piet's affidavit.

¶ 10    On March 5, 1962, Elmhurst adopted an "Ordinance Providing for the Annexation to the City of Elmhurst of Certain Property West of Sunnyside Avenue and South of McKinley Avenue" (1962 Annexation Ordinance). The 1962 Annexation Ordinance included the portion of the H.O. Stone Addition that included West Avenue (a portion of the disputed property). On March 9, 1962, a plat depicting the annexed territory (including the portion of the disputed property) was recorded in Du Page County; additionally, a certified copy of the plat was attached to Piet's affidavit.

¶ 11    On August 6, 1968, Elmhurst adopted an ordinance vacating certain streets (Vacation Ordinance). The Vacation Ordinance included some of the territory depicted in the plat of the H.O. Stone Addition. The streets vacated at that time were portions of Coolidge, Wilson, and Harding Streets, all of which intersected, but did not pass through, West Avenue. West Avenue was not included among the streets vacated. On August 19, 1968, the Vacation Ordinance and a plat of vacation were recorded in Du Page County. Certified copies of the Vacation Ordinance and the plat of vacation were attached to Piet's affidavit.

¶ 12    On September 12, 1968, a plat of Matthew's Subdivision was recorded in Du Page County. Matthew's Subdivision contained lots 8 through 15 of blocks 7, 8, 9, and 10 of the H.O.

Stone Addition. A certified copy of the plat of Matthew's Subdivision was attached to Piet's affidavit.

¶ 13    On September 15, 1974, Elmhurst obtained fee simple title to the property contained in Matthew's Subdivision (with the exception of certain property located in lot 1 of Matthew's Subdivision, which does not affect the disputed property) (1974 acquisition). On September 24, 1974, Elmhurst's deed for the 1974 acquisition (1974 deed) was recorded in Du Page County. A certified copy of the deed was attached to Piet's affidavit.

¶ 14    Piet averred that three exhibits attached to his affidavit were created using aerial photographs depicting plaintiff's property, the disputed property, and other nearby property, overlaid with markings depicting the various lot boundaries. The three aerial photographs were taken in 2002, 2005, and 2013. The fence does not appear to be visible in the photographs, presumably lying beneath the marking depicting the eastern boundary of West Avenue, but, in the 2005 and 2013 exhibits, stored vehicles and trailers can be seen on the disputed property.

¶ 15    Finally, Piet attached a February 23, 1990, letter, purporting to be from "Cantore and Company" and signed by Jay DeGarmo, suggesting that Elmhurst vacate its portion of the disputed property to allow it to be incorporated into Villa Park and then combined with plaintiff's property. There were several handwritten notations on the letter, one of which stated that, on March 16, 1990, Elmhurst contacted DeGarmo and informed him that it had no interest in vacating its portion of the disputed property. We note that, in arguing its motion to dismiss, Elmhurst did not reference the DeGarmo letter, and plaintiff disavowed that the letter was from it (although it might be reasonable to infer from the facts submitted in this matter that Cantore and Company had either an ownership or a beneficial interest in plaintiff's property when the letter was written). Moreover, the trial court reviewed and commented on the letter but placed only a

small amount of weight on it in rendering its decision.

¶ 16    James W. Rogers, the executive director of the Elmhurst Park District (Park District), supplied the second affidavit. Rogers averred that the Park District owned and leased real property within Elmhurst's boundaries for recreational uses as public parks. There are a number of parks within Elmhurst located along Salt Creek, including Maple Trail Woods Park, which has been in its current form since 1985. Maple Trail Woods Park is comprised of property owned by the Park District, property owned by Elmhurst and leased to the Park District, and property owned by the Du Page County Forest Preserve District (Forest Preserve).

¶ 17    In 1983, the Park District and Elmhurst entered into a lease in which Elmhurst leased territory to the Park District for the purpose of creating or maintaining public parks and recreation areas. The territory leased included property in Maple Trail Woods Park and Elmhurst's portion of the disputed property. A certified copy of the lease and the accompanying plat were attached to Rogers's affidavit.

¶ 18    In 1995, the Park District and Elmhurst again entered into a lease for the purpose of creating or maintaining public parks and recreation areas. In the 1995 lease, Elmhurst leased the 1974 acquisition. Rogers attached a certified copy of the 1974 deed to his affidavit; it appears to be the same as that attached to Piet's affidavit.

¶ 19    In this affidavit, Rogers averred that Maple Trail Woods Park contained a pedestrian and bicycle trail that ran along Salt Creek and was part of the Salt Creek Greenways Trail. According to Rogers, the Salt Creek Greenways Trail was about 30 miles long, running through 12 municipalities from Busse Park in Elk Grove Village to the Brookfield Zoo. Rogers did not attach any documentary evidence to support these averments.

¶ 20    On January 8, 2015, plaintiff filed a motion to strike portions of Piet's and Rogers's

affidavits. Plaintiff challenged the aerial photographs with the lot-line overlays attached to Piet's affidavit and some of the averments in Rogers's affidavit. On March 5, 2015, the trial court denied the motion to strike with respect to Piet's affidavit and granted in part the motion to strike regarding Rogers's affidavit. Specifically, it struck Rogers's averments about public use of the parks. The trial court also invited Elmhurst to file a supplement to Rogers's affidavit.

¶ 21    On March 25, 2015, Elmhurst filed a supplemental affidavit in which  Rogers averred that, ever since Elmhurst's property had been included as part of Maple Trail Woods Park, it had been used as a public park and recreation area and had been continually open, vacant, wooded, and a wetland area. Rogers further averred that the zoning regime for Maple Trail Woods Park was "CR," for conservation and recreation. Rogers also attached a certified copy of the intergovernmental agreement creating the Salt Creek Greenways Trail. Plaintiff did not challenge the averments in Rogers's supplemental affidavit.

¶ 22    On July 9, 2015, Elmhurst was granted leave to file the affidavit of Kim McGrew, the superintendent of streets for Elmhurst. McGrew averred that she had personally reviewed and was familiar with the plat of the H.O. Stone Addition. McGrew also had reviewed and was familiar with Elmhurst's 1927 annexation ordinance (1927 Annexation Ordinance) and attached to her affidavit a certified copy of the 1927 Annexation Ordinance and the accompanying plat. McGrew had reviewed and was familiar with the 1962 Annexation Ordinance and the accompanying plat. McGrew averred that, based on her review of the H.O. Stone Addition, the 1927 Annexation Ordinance, and the 1962 Annexation Ordinance, along with her personal knowledge of the property depicted in those documents, all of the territory in the H.O. Stone Addition had been annexed to Elmhurst and was within Elmhurst's boundaries. McGrew averred that she had personal knowledge of the streets, rights-of-way, and roadways depicted in

the plat of the H.O. Stone Addition, and she noted the streets that Elmhurst paved and maintained. McGrew did not mention West Avenue by name in her affidavit.

¶ 23    Plaintiff responded to Elmhurst's motion to dismiss. Plaintiff argued that the plats included in the affidavits Elmhurst promulgated did not establish the ownership rights in the disputed property (specifically, in Elmhurst's portion of the disputed property). Particularly, plaintiff contended, the plats did not expressly dedicate West Avenue as a public street and Elmhurst's evidence did not establish a common-law dedication of West Avenue as a public street. Plaintiff further argued that Elmhurst did not establish that it had accepted any dedication of West Avenue, either statutory or common-law. Finally, plaintiff contended, the evidence did not demonstrate that the disputed property was "used by the public-at-large as opposed to a strictly local use."

¶ 24    On August 31, 2015, the trial court granted Elmhurst's motion to dismiss. The court ruled:

> "At issue in this case is whether there's been a dedication of the disputed property by [Elmhurst] to defeat the Plaintiff's complaint. The disputed property is a portion of a 33-foot strip of land that runs along the western boundary of certain property in Elmhurst, and for simplicity purposes the court identifies it as West Avenue. The parties don't dispute the law that's applicable to this case. Again, the issue goes back to whether there's been a dedication. Statute of limitations for adverse possession does not run against property held for public use. Whether this is a statutory dedication or a common law dedication, again is at issue in this case. The statutory dedication involves three things. Three things must happen.
>
>     First, the property owner files or records a plat which makes or notes on the plat

portions of the premises as donated or granted to the public, and the public entity accepts the dedication, and the ascertainable grantee must take title. To determine whether there's a statutory dedication, courts are limited to an examination of the plat and the marks and notations appearing on the plat. A survey and a plat alone are sufficient to establish a dedication if it's evident from the face of the plat it was the intention of the proprietor to set apart certain grounds for public use. It must be clear from the face of the plat that a dedication was intended.

With respect to common law dedication, *** the fee remains in the dedicator subject to an easement for the benefit of the public. Three things must be present. An intention to dedicate for public use, acceptance by the public, and unequivocal evidence of the first two elements. Intent of the dedicator may be manifested by a formal dedication or by acts of the donor from which the intent may be so fairly presumed as to equitably estop the donor from denying a donative intent. Proof of any act by the dedicator that evidences an intention to dedicate must be clear, unequivocal, and unambiguous. Additionally, general law regarding dedication concerning the issue of dedication [*sic*]. A dedication may be made by grant or other written instrument or may be evidenced by acts and declarations without writing.

No particular form is required to the validity of a dedication [*sic*]. It is purely a question of intention. A dedication may be made by a survey and plat alone without any declaration either oral or on the plat when it is evident from the face of the plat that it was the intention of the proprietor to set apart certain grounds for the use of the public.

In reviewing all of these cases that both parties cited, the overriding or one of the overriding themes the court kept coming back to was the intent or the intention. So, key

pieces of evidence this court relied upon in making its ruling.

First, was [the H.O. Stone Addition] 1925 plat which was recorded on March 10th of 1925. The western boundary of the [H.O. Stone Addition] plat is depicted as a strip labeled West Avenue with its western boundary running along the west line of the south one half of the southwest one quarter of Section 11, Township 39, north, range 11, east of the third principle meridian. West Avenue runs into [sic] north south direction along the western boundary of Section 7, 8, 9, and 10 of the plat and has designated and has a designation of 33 on the north and south ends of the West Avenue strip. West Avenue is [intersected] by five streets. McKinley Street, Roosevelt Street, Wilson Street, Harding Street, Coolidge Street that run in an east west direction to all [sic]. In an east west direction that all [intersect] with Salt Creek to the east [sic]. The Court agrees with Elmhurst that these strips depicted on the plat are intended to be an offer of dedication for public streets.

Second key piece of evidence this court relied upon was the 1962 Annexation Ordinance. [Elmhurst] and the court agrees [sic] affirmative matter shows [Elmhurst's] intent to accept the dedication of the disputed property. And it began when it adopted the [1962 Annexation Ordinance], and approves the annexation plat that is recorded depicting a portion of the property platted in the [H.O. Stone Addition] plat. The annexation plat depicts the blocks and lots from the plat that were annexed and also depicts West Avenue running north and south along the western boundary of the territory annexed. The next key piece of evidence this court relied on was the 1968 vacation ordinance of certain streets. And the evidence showed that in 1968, [Elmhurst] adopted a vacation ordinance authorizing vacation of part of Coolidge, Wilson, and Harding.

[Elmhurst's] 1968 vacation of these streets results in the only access to the property contained in lots 12, 13, 14, and 15 of block seven, lots 8 through 15 of block 8, and lots 8 through 15 of block 9, and lots 2 through 4 of block 10 is provided by West Avenue. The next document again supporting the court's ruling with the 1968 Matthew's subdivision plat depicting, also depicting the disputed property. And in 1968, that plat was recorded creating a single lot one containing lots 8 through 15 of block seven, lots 8 through 15 of block 8, lots 8 through 15 of block 9, and lots 2 through 9 of block 10. All from that original [H.O. Stone Addition] plat and also including the area of Coolidge Street, Wilson Street, Harding Street which were vacated by [Elmhurst]. So that Matthew's subdivision depicts two streets running east and west, McKinley and Madison, and one street, West Avenue running north to south the length of the western boundary of the newly created lot one. Again by way of this subdivision, the only north to south access for lot one is provided by West Avenue.

Moving forward, the court relied on the 1974 warranty deed, and this is where [Elmhurst] obtains title to most of the property. Again [Elmhurst's] only north to south access to its property by way of the 1974 warranty deed is provided by West Avenue.

In addition to all of that evidence that is just recently or just cited by the court [*sic*]. The court also noted and relied upon the evidence of the 1983 and 1995 leases between [Elmhurst] and the [Park District] wherein the disputed property is specifically listed as quote subject property end of quote and shows a clear intention of dedication for public use.

Finally, for good measure although not heavily weighed by this Court, the Court did note that the 1989 survey, plat of survey is not a recorded survey, but is prepared by

an Illinois Registered Land Surveyor. It was prepared for Cantore, Cantore and Company and it depicts West Avenue or West Ave. As an unincorporated ave. Similar to all the other plats presented in this matter.

So the court believes that Elmhurst has shown sufficient affirmative matter to support its motion [to dismiss]. All of the evidence cited by this Court leads the Court to conclude that there has clearly been a common law dedication of the 33-foot strip that includes the disputed property. The court also believes that based on the entirety of all the evidence, there has been a statutory dedication of this disputed property. And going back to that initial statement of the law that the Statute of Limitations for adverse possession does not run against property held for public use, the court grants the motion, the 2-619 motion dismissing counts 3 and 4 of the Plaintiff's complaint. And the dismissal is with prejudice."

¶ 25 On September 8, 2015, Elmhurst filed a motion for a finding pursuant to Illinois Supreme Court Rule 304(a) (eff. Feb. 26, 2010). On January 26, 2016, the trial court granted the motion, making the express finding that there was no just reason to delay enforcement or appeal of the order dismissing counts III and IV of plaintiff's complaint.

¶ 26 On February 25, 2016, plaintiff filed a motion to reconsider the trial court's order dismissing its claims against Elmhurst. Plaintiff argued that the trial court had misapplied the law relating to statutory and common-law dedications of property as public roads, as well as the law relating to a municipality's acceptance of such a dedication. On June 28, 2016, the trial court denied plaintiff's motion to reconsider. Plaintiff timely appeals.

¶ 27                                    II. ANALYSIS

¶ 28   Plaintiff argues on appeal that the trial court erred in dismissing its complaint pursuant to section 2-619 of the Code (735 ILCS 5/2-619 (West 2014)).  A motion to dismiss under section 2-619 admits the sufficiency of the complaint but asserts that an affirmative matter defeats the claim.  *In re Estate of Kirk*, 2017 IL App (4th) 160416, ¶ 39.  When ruling on a section 2-619 motion, the trial court must interpret the pleadings and supporting documents in the light most favorable to the nonmoving party.  *Id.* ¶ 41.  We review *de novo* the trial court's judgment on a section 2-619 motion.  *Id.*

¶ 29   In its complaint, plaintiff proceeded under the theory that it had satisfied the conditions to claim that it owned the disputed property through adverse possession.  Elmhurst's motion to dismiss sought to rebut plaintiff's claim of adverse possession by showing that its portion of the disputed property had been dedicated for public use, either through a statutory dedication or through a common-law dedication.  Next, Elmhurst sought to demonstrate that it had accepted the dedication.  Finally, Elmhurst sought to prove that its portion of the disputed property was subject to public use sufficient to defeat plaintiff's claim of adverse possession.  On appeal, then, plaintiff challenges each facet of Elmhurst's motion to dismiss.  Plaintiff argues first that Elmhurst did not demonstrate any dedication for public use, either statutory or common-law, of its portion of the disputed property.  Plaintiff next argues that Elmhurst never accepted any dedication.  Finally, plaintiff contends that the trial court erred in considering Elmhurst's portion of the disputed property to be subject to public use, because it, at best, serves only a local interest.  We consider each contention in turn.

¶ 30                    A. Statutory or Common-Law Dedication

¶ 31   As a preface to its contentions about statutory and common-law dedications, plaintiff first argues that the trial court erred in determining that Elmhurst owned its portion of the disputed

property. Plaintiff reasons that, if Elmhurst did not own its portion of the disputed property, then it could not validly lease that portion to the Park District. Plaintiff argues that, in turn, the 1983 and 1995 leases could not be used as evidence of Elmhurst's ownership or its intent to subject its portion of the disputed property to public use.

¶ 32    Plaintiff bases this prefatory argument on an apparently commonsense observation: the boundary lines of the various lots did not extend into the area marked as West Avenue, so Elmhurst's annexation of territory containing its portion of the disputed property would have had no effect on the ownership of the disputed property. Plaintiff argues that, even if Elmhurst received fee simple title to lot 1 of Matthew's Subdivision, lot 1 did not include any of the disputed property, because the western boundary line of lot 1 did not include the 33-foot-wide strip of land comprising Elmhurst's portion of the disputed property. Plaintiff derides Elmhurst's contention as conflating the creation of municipal boundaries through annexation (as to which plaintiff appears to concede that Elmhurst's portion of the disputed property is correctly ascribed to be within Elmhurst's corporate boundaries) and the actual ownership interest in the territory so annexed. Plaintiff correctly points out that Elmhurst cites no authority that equates annexation and ownership. However, this sets up a bit of a straw-man argument.

¶ 33    It is well established that a statutory dedication vests title to the dedicated property in the public. *Republic Bank of Chicago v. Village of Manhattan*, 2015 IL App (3d) 130379, ¶ 18; *Reiman v. Kale*, 83 Ill. App. 3d 773, 776 (1980). If Elmhurst can demonstrate that its portion of the disputed property was the subject of a statutory dedication as a public street, then it would possess fee simple title to its portion of the disputed property, and plaintiff's contentions regarding ownership would be foreclosed. Thus, we turn to that issue.

¶ 34    A statutory dedication occurs when: (1) the property owner files or records a plat that marks or notes the portions of the premises donated or granted to the public, and (2) the public entity accepts the dedication. *Bigelow v. City of Rolling Meadows*, 372 Ill. App. 3d 60, 64 (2007). To complete a statutory dedication, the provisions of the Plat Act (currently 765 ILCS 205/0.01 *et seq.* (West 2014)) must be fully complied with, and the plat must clearly indicate a donation to the public of the property in question. *Bigelow*, 372 Ill. App. 3d at 64-65. In order to determine whether a plat fully complies with the Plat Act, a court must refer to the version of the Plat Act in force when the plat was created. *Lambach v. Town of Mason*, 386 Ill. 41, 47 (1944). There must also be an ascertainable public entity to take title. *Bigelow*, 372 Ill. App. 3d at 65. In determining whether there is a statutory dedication, the court is limited to an examination of the plat and the marks and notations appearing on the plat. *Id.* We turn first to compliance with the proper version of the Plat Act.

¶ 35    Elmhurst's claim of title arises from the H.O. Stone Addition, recorded on March 10, 1925. At that time, the Plat Act provided:

"§ 1. *Be it enacted by the People of the State of Illinois, represented in the General Assembly:* Whenever the owner of lands shall wish to subdivide the same into two or more parts for the purpose of laying out a town, or making any addition to any city, village or town, or of re-subdividing any lots or blocks therein, he shall cause the same to be surveyed and a plat thereof to be made by the county surveyor or some other competent surveyor, which plat shall particularly describe and set forth all the streets, alleys, common or public grounds, and all the in and out lots or fractional lots or blocks within, adjoining or adjacent to the land so divided, giving the names, width, courses and extent of all such streets and alleys, and numbering all lots and blocks by progressive

- 15 -

numbers, giving their precise length and width. Reference shall also be made upon the plat to some known and permanent monument from which future surveys may be made, or, if no such monument shall exist within convenient distance, the surveyor shall, at the time of making his survey, plant, and fix in such manner that the same shall not be moved by frost, at the corner of some public ground, or, if there be none, then at the corner of some lot or block most convenient for reference, a good and sufficient stone, to be furnished by the person for whom the survey is made, and designate upon the plat the point where the same may be found.

*** § 2. The plat having been completed, shall be certified by the surveyor and acknowledged by the owner of the land, or his attorney duly authorized, in the same manner as deeds of land are required to be acknowledged. The certificate of the surveyor and of acknowledgement, together with the plat, shall be recorded in the recorder's office of the county in which the land is situated, or if the title to the land is registered under the Land Titles Act, shall be filed in the office of the registrar of titles for the county, and such acknowledgment and recording, or such acknowledgment and filing as aforesaid, shall have like effect and certified copies thereof and of such plat, or of any plat heretofore acknowledged and certified according to law, may be used in evidence to the same extent and with like effect, as in case of deeds.

*** § 3. The acknowledgement and recording of such plat, or the acknowledgment and filing of the same as aforesaid, shall be held in law and in equity to be a conveyance in fee simple of such portions of the premises platted as are marked or noted on such plat as donated or granted to the public, or any person, religious society, corporation or body politic, and as a general warranty against the donor, his heirs and

representatives, to such donee or grantee, for their use or for the use and purposes therein named or intended, and for no other use or purpose. And the premises intended for any street, alley, way, common or other public use *** shall be held in the corporate name thereof in trust to and for the uses and purposes set forth or intended." Ill. Rev. Stat. 1925, ch. 109, ¶¶ 1-3.

¶ 36     The plat of the H.O. Stone addition fulfills the technical requirements of sections 1 and 2 of the Plat Act from 1925. First, it is labeled as "H.O Stone & Company's Spring Road Addition to Elmhurst." It makes apparent that it intends to be an addition to Elmhurst, as then constituted. Ill. Rev. Stat. 1925, ch. 109, ¶ 1. The plat bears an owner's certificate in which the Chicago Title and Trust Company, under the provisions of a dated and numbered trust agreement, states that it is the owner of the described land and caused the land to be surveyed, subdivided, and platted as shown on the plat. The owner's certificate appears to be properly notarized. Likewise, the plat bears a surveyor's certificate that states that the surveyor, who was registered with the State, surveyed the land, subdivided it into blocks and lots, and noted the streets and alleys, all of which were correctly represented on the plat. See *id.* Additionally, the plat shows that the land is subdivided into blocks that are progressively numbered and contain lots that are progressively numbered, and it gives the lots' lengths and widths. The streets are particularly described by name, width, and course. The section lines and quarter lines are depicted; a stone monument is identified at the intersection of West Avenue and Coolidge Street. See *id.*

¶ 37     The requirements of section 2 of the Plat Act are also fulfilled. The plat contains on its face the required certifications of the owner and the surveyor. Further, the plat demonstrates that it was recorded in the recorder's office of Du Page County. Ill. Rev. Stat. 1925, ch. 109, ¶ 2. Pursuant to section 3 of the Plat Act, the acknowledged and recorded plat conveyed fee simple

title to the portions of the premises marked as donated or granted to the public, namely, the streets and alleys shown on the plat. Ill. Rev. Stat. 1925, ch. 109, ¶ 3. Accordingly, we hold that the plat of the H.O. Stone Addition fulfills the requirements for a statutory dedication of the streets depicted on it, thereby vesting Elmhurst with fee simple title to its portion of the disputed property.

¶ 38    Plaintiff argues that, for a statutory dedication to be effective, the plat must clearly indicate a donation to the public. Plaintiff specifically contends that, because the plat for the H.O. Stone Addition does not bear sufficient indicia of the intent to donate, such as including the words "hereby dedicated" or labeling the portions of the territory to be donated as "public," the trial court erred in concluding that there was a statutory dedication of the streets depicted on the plat. We disagree.

¶ 39    Remembering that we are limited to considering the marks and notations on the plat in determining whether a statutory dedication was accomplished (*Bigelow*, 372 Ill. App. 3d at 65), we believe that the unmistakable intent of the original proprietor was to dedicate to Elmhurst as a public street the territory marked as West Avenue on the plat of the H.O. Stone Addition. West Avenue appears on the plat as a north-south street, and it is notated with the marking "33' " at the northernmost and southernmost extents of its course. The eastern boundary of West Avenue is marked by a solid line (with gaps for the intersecting streets). The western boundary of West Avenue is marked by a dashed and dotted line depicting the western line of a specifically described section. West Avenue forms the western boundary of the territory depicted in the plat (excepting the bend of Salt Creek, which also seems to physically denote the western boundary of the territory lying south of Coolidge Street). McKinley Street, an east-west street, forms the northern boundary of the territory depicted in the plat, and it similarly bears the notation "33' " at

the easternmost and westernmost extents of its course. The eponymous Spring Road appears on the plat as a north-south street. Its eastern and western boundaries are depicted as solid lines; a dashed and dotted line representing the eastern line of a specifically described section runs down the middle of Spring Road, and at the northernmost and southernmost extents of Spring Road's course, the notation "33' " appears to the east and west of the dashed and dotted line in the middle of Spring Road. Similarly, a portion of Berkley Avenue, also a north-south street, forms the eastern boundary of the territory depicted on the plat. At its northernmost extent, it bears the notation "50"; at its southernmost extent, it bears the notation "25." Along block 18, Berkley Avenue's western boundary is represented by a solid line; beginning at Coolidge Street, a dashed and dotted line representing the eastern line of a specifically described section appears as the eastern boundary of Berkley Avenue. At the intersection of Coolidge Street and Berkley Avenue, the northernmost extent of the apparently partial portion of Berkley Avenue bears the notation "25." Finally, Coolidge Street (excepting the portion of Salt Creek to the south of Coolidge Street), an east-west street, forms the southern boundary of the platted territory. Running west from Salt Creek, the northern boundary of Coolidge Street is shown by a solid line; the southern boundary of Coolidge Street is shown by a dashed and dotted line portraying the northern and southern lines of specifically described sections. At its westernmost extent, Coolidge Street bears the notation "33'." Running east from the intersection of Coolidge Street and Berkley Avenue, the northern boundary of Coolidge Street is shown by a solid line (with gaps for the intersecting streets); the southern boundary of Coolidge Street is shown by a dashed and dotted line portraying the northern and southern lines of specifically described sections. At its easternmost extent, near the intersection with Spring Road, Coolidge Street bears the notation "33'."

¶ 40    The plat, therefore, shows the territory being subdivided, with the streets indicated by name. Around the periphery of the territory, the streets are named, but shown as being 33 feet in width, which is half the width of the internal east-west streets and half the width of Spring Road. In *Thompson v. Maloney*, 199 Ill. 276, 284-85 (1902), the supreme court held that a similar half-width strip of land circumscribing the platted territory clearly showed upon the face of the plat the proprietor's intent to donate the strip to the public as a street or alley. The court held:

> "The natural presumption arising from the face of the plat is that the strip in question, being a part of the subdivision as platted, and yet not being a part of any platted lot, and extending, as it does, on all sides of the platted lots, and comprising one half of the streets and avenues on other sides of the plat, was platted as one half of a street, the other half whereof it is clear the proprietor of the plat expected and intended should be furnished out of adjoining premises when platted. There is nothing otherwise on the plat to overcome the presumption. That the presumption arises from the face of the plat that the strip in question was intended to be dedicated to the public use is supported by the text of [a treatise]." *Id.* at 285.

¶ 41    Similarly, in *Kennedy v. Town of Normal*, 359 Ill. 306, 309-10 (1934), our supreme court held, simply by observing the face of the plat, that an unnamed strip was intended to be donated to the public as an alley, even though the proprietor of the plat did not otherwise satisfy the requirements for a statutory dedication. The court noted that the streets on the plat had been named and that, although the unnamed alley appeared between the lots of the relevant block, the "plat and its certificate sufficiently show[ed] the intention of the proprietor" "to set apart certain grounds for the use of the public." *Id.* at 310.

¶ 42    Because the circumstances in this case are similar to those in *Thompson* and *Kennedy*, the same result obtains.  As in *Thompson*, there is a platted strip that surrounds the entirety of the territory, where the geography of Salt Creek allows.  Additionally, all of the circumscribing strips are expressly named as streets and avenues, including West Avenue.  As in *Kennedy*, the circumscribing strips, including West Avenue, intersect with other named streets and avenues.  Thus, from the face of the plat and the fact that the plat is intended to represent an addition to Elmhurst, we can glean that the proprietor intended to set apart the named streets for use by the public.  *Id.* at 309-10; *Thompson*, 199 Ill. at 284-85.

¶ 43    In addition, we note that the 3rd Spring Road Addition shows an unnamed 25-foot-wide strip running along the eastern boundaries of lots abutting the 33-foot-wide strip in the H.O. Stone Addition denominated as West Avenue.  Where a strip was intended to constitute a portion of a street, even if unnamed, the other portion of the street will be furnished by the adjoining property when it is platted.  *Thompson*, 199 Ill. at 290.  Here, the 3rd Spring Road Addition supplied a 25-foot-wide strip that was intended to comprise a portion of a street; West Avenue as denominated on the plat of the H.O. Stone Addition was the adjoining property and completes the street as contemplated in both plats.  *Id.*  Thus, *Thompson* suggests that the interpretation that West Avenue was intended to be dedicated as a public street is the only reasonable construction of the plats at issue, and it helps to confirm our judgment regarding whether West Avenue was the subject of a statutory dedication.

¶ 44    Plaintiff urges that "[m]erely identifying a road on a plat, without the corresponding language, however, is not sufficient to evidence a statutory dedication."  We agree that words and phrases such as "public" or "hereby dedicated" also indicate a proprietor's intent to dedicate to the public the territory so denominated.  Nevertheless, a plat that does not bear such words or

phrases can still indicate that territory labeled as a roadway was intended to be dedicated to the public. *Kennedy*, 359 Ill. at 309-10; *Thompson*, 199 Ill. at 284-85.

¶ 45 To support its contention, plaintiff directs our attention specifically to *Bigelow*, 372 Ill. App. 3d 60, and *Semmerling v. Hajek*, 258 Ill. App. 3d 180 (1994). In *Bigelow*, the plaintiffs sued the City of Rolling Meadows (City) for a declaration that they owned a 33-foot strip of land and that the City had no interest in that property. *Bigelow*, 372 Ill. App. 3d at 61. The trial court ruled in favor of the plaintiffs, holding that there had been no statutory dedication of the subject property and that the City had waived its argument that there was nevertheless a common-law dedication, and the City appealed. *Id.* The subject property was currently within the City's municipal boundaries, but, when it was platted, it lay in unincorporated Cook County and was designated as Winnetka Avenue. The subject property was adjacent to the plaintiffs' lots in a subdivision. *Id.*

¶ 46 The City asserted that it annexed the subject property in 1961, but the plat of annexation was not included in the record on appeal. *Id.* at 62. In 1992, the City passed an annexation ordinance in which the subject property was referred to as " 'dedicated Winnetka Avenue' " or " 'dedicated right-of-way Winnetka Avenue.' " *Id.* However, at the time of the action, the subject property had never been paved or used as a public way for vehicular or pedestrian traffic. *Id.* Further, portions of the copy of the annexation ordinance appearing in the record were illegible. *Id.* at 62 n.2.

¶ 47 Faced with these facts, the appellate court invoked the principle that deficiencies in the appellate record will be construed against the appellant, who has the obligation to provide a sufficient record to support the claims of error raised. *Id.* at 62 n.1 (citing *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984)). Likewise, Under the *Foutch* principle, the appellate court was

required to presume that the order entered by the trial court was in conformity with the law and had a sufficient factual basis; as well, any doubts arising from the incompleteness of the record on appeal would be resolved against the appellant. See *Foutch*, 99 Ill. 2d at 392. Because the plaintiffs had prevailed in the trial court, and because the City had failed to provide certain important portions of the record on appeal, the appellate court's ruling was already tilted in favor of the plaintiffs.

¶ 48 Plaintiff here points to the idea that, in order to effect a statutory dedication, " 'the plat must clearly indicate a donation to the public of the real estate in question.' " *Bigelow*, 372 Ill. App. 3d at 64-65 (quoting *Emalfarb v. Krater*, 266 Ill. App. 3d 243, 252 (1994)). The *Bigelow* court concluded that, "although the Subject Property was designated as Winnetka Avenue, there were no marks or notations on the plat evidencing an intent to dedicate the Property for use by the public." *Id.* at 66. The court further noted that, although "most roads are public, there is no prohibition against private streets." *Id.* at 66-67. According to plaintiff here, this is the takeaway from *Bigelow*: that, in the absence of marks or notations on the plat expressly stating that the roadways are donated to the public, it is improper to conclude that the proprietor of the plat intended to donate the roadways to the public. Plaintiff's interpretation of *Bigelow* is not borne out upon a close examination.

¶ 49 First, we note that the idea that the " 'plat must clearly indicate a donation to the public of the real estate in question' " (*id.* at 64-65 (quoting *Emalfarb*, 266 Ill. App. 3d at 252)) does not necessarily foreclose the results in *Kennedy* and *Thompson*, in which unnamed strips of land were nevertheless deemed to be dedicated to the public. This is because the plats could still be read as dedicating named roadways to the public even though the plats did not bear the words or

phrases "public" or "hereby dedicated." *Kennedy*, 359 Ill. at 309-10; *Thompson*, 199 Ill. at 284-85.

¶ 50   Next, and we note that plaintiff's treatment of *Bigelow* wholly overlooks this point, the *Bigelow* court appears to have based its rejection of the principles from *Kennedy* and *Thompson* on the fact that the subdivision was located in unincorporated Cook County when it was platted. Specifically, the court held: "Where the subdivision was located not within the boundaries of a municipality, but in unincorporated Cook County, we will not assume dedication in the absence of [marks or notations on the plat evidencing an intent to dedicate the subject property for use by the public]." *Bigelow*, 372 Ill. App. 3d at 67.   In other words, one of *Bigelow*'s key aspects was the fact that the subdivision was not designated as an addition to a municipality, so the proprietor's failure to expressly dedicate the subject property to the public takes on a different significance, because it might be reasonable to infer that private streets would be contained in an unincorporated area (and perhaps a private community), whereas it is a much less likely inference when the territory is located in a municipality or is designated as an addition to a municipality.   In the instant case, the circumstances do not appear to be similar to those in *Bigelow*, because the H.O. Stone Addition was designated as an addition to the municipality of Elmhurst, and applying the principles in *Kennedy* and *Thompson* appears to be more appropriate in such circumstances.   Accordingly, we determine that *Bigelow* is distinguishable and provides little guidance under the circumstances of this case.

¶ 51   Turning to *Semmerling*, we note that plaintiff urges that it stands for the same proposition as *Bigelow*, namely, that the bare identification of a road on a plat, without language specifying the proprietor's intent to dedicate the road for use by the public, is insufficient to evidence a statutory dedication.   In *Semmerling*, the plaintiff was the Lake Villa Township highway

commissioner; the defendant was a private citizen who owned a parcel of land that included the disputed road. The disputed road was located within a 40-foot-wide "driveway" running east and west from Munn Road, which was designated as a " 'driveway for use of lot owners,' " to Crooked Lake. *Semmerling*, 258 Ill. App. 3d at 181. The disputed road was paved up to a point 65 feet from the defendant's property; beyond the paved point, the disputed road continued as a dirt path, but the terminus of the paved portion of the disputed road was not shown on the plat. *Id.* The paved and unpaved portions of the disputed road were separated by a gate with a sign reading " 'Private' " and " 'No Parking.' " *Id.* At the eastern border of the defendant's property, a spray-painted line and the word, " 'PRIVATE' " marked the disputed road. *Id.* Wood fences ran parallel to the disputed road on each side, but the entire width of the way between the fences was not paved. *Id.* The particular portion of the disputed road at issue was the portion running from the eastern border of the defendant's property to the gate. *Id.*

¶ 52 There was testimony that the Township maintained the disputed road and removed obstacles and debris that the defendant placed on the road. *Id.* at 182. There was also testimony that residents of the subdivision and their guests used the disputed road to access Crooked Lake and that the subdivision's homeowner's association maintained the road. *Id.* at 182-83.

¶ 53 The plaintiff filed suit against the defendant in small claims court to recover the Township's costs for removing the defendant's obstructions and damage to the disputed road. The defendant counterclaimed for trespass, claiming ownership of the portion of the disputed road at issue. *Id.* at 183. The trial court determined that the portion at issue had been used by the public for 15 years, and it dismissed the defendant's trespass counterclaim; the trial court also determined that the plaintiff had not followed the correct statutory procedure to recover damages and had therefore failed to prove damages. *Id.* The defendant then moved to clarify the ruling,

requesting that the trial court define the prescriptive easement arising from the public's use of the disputed road. The trial court determined that the easement included the paved portion and six feet on either side of the paved portion, and the plaintiff appealed. *Id.*

¶ 54   In considering the arguments, this court initially noted that the issues turned "largely on the subtle facts of the case" and that, because the bystander's report only summarized the testimony, we would follow *Foutch* and presume that the trial court's order conformed to the law and had a sufficient factual basis when any ambiguities arose due to the incompleteness of the record. *Id.* at 184-85. After resolving issues that are not pertinent here, we turned to the plaintiff's claim that the plat represented a statutory dedication of the disputed road. *Id.* at 186. We held that the denomination of the disputed road as a "driveway," especially when considered in conjunction with Munn Road's denomination as a " 'driveway for use of lot owners,' " was "not a clear indication of an intent to dedicate the parcel to public use." *Id.* at 187. We then recited the principle for which plaintiff in this case cites *Semmerling*: "the mere fact that a plat indicates the presence of streets is insufficient to effect a statutory dedication because there is no general prohibition against private streets." *Id.*

¶ 55   *Semmerling* is readily distinguishable. In the context of that case, a "driveway" is a different type of roadway than a named street on a plat of an addition to a municipality. Moreover, the fact that the disputed road ran from Crooked Lake to Munn Road, which was labeled as a "driveway for use of lot owners," added ambiguity to the disputed road's designation, making an intent to donate it to the public less likely. In other words, in *Semmerling*, the markings on the plat undermined the conclusion that the disputed road was donated to the public and supported the conclusion that it was intended to be a private roadway. In the instant case, by contrast, there are no markings or words on the plat of the H.O. Stone

Addition that lead to any conclusion but that the roadways were intended to be dedicated to the public. Accordingly, *Semmerling* is clearly distinguishable and offers little guidance here.

¶ 56    Plaintiff also cites *Reiman*, 83 Ill. App. 3d 773, for the same principle for which he cites *Bigelow* and *Semmerling*. In *Reiman*, the highway commissioner of Downers Grove Township sought an injunction to prevent the respondents from erecting barriers across a roadway in a subdivision and, ultimately, a declaration that the disputed roadway was a public right-of-way. *Id.* at 775. Though sparse, the facts of the case suggest that the subdivision was adjacent to a private landing strip and that lot owners used the private landing strip. The disputed roadway was one of two access roads into the subdivision, and it ran across a 29-acre lot that had been purchased for development of smaller lots. However, two lot owners erected barricades across the disputed roadway to prevent access to the 29-acre lot. *Id.*

¶ 57    This court determined that the central question on appeal was whether the trial court had correctly declared that the disputed roadway was a public right-of-way. *Id.* at 776. Pertinent to the issues here, we determined that the dedication of the disputed roadway in the original plat was not a statutory dedication. *Id.* The plat did not state that the streets were dedicated to the public, and the platted lot lines were solid and ran to the center of the streets, while the streets were indicated by dotted lines. *Id.* We held that, based on these two factors, we could not say that the plat indicated a donation to the public. *Id.*

¶ 58    In this case, the plat of the H.O. Stone Addition also did not expressly indicate that the streets had been donated to the public. However, the streets were laid out and the lot boundaries never crossed into the streets, which clearly supports the intent to donate the streets to the public. Combine this with the fact that, on its face, the plat of the H.O. Stone Addition was designated as

an addition to Elmhurst, and we can conclude that the intent to donate to the public was sufficiently demonstrated. Accordingly, *Reiman* is distinguishable.

¶ 59 Plaintiff also cites *Township of Jubilee v. State of Illinois*, 405 Ill. App. 3d 489 (2010), *In re Petition of the Village of Mount Prospect*, 167 Ill. App. 3d 1031 (1988), and *Water Products Co. of Illinois, Inc. v. Gabel*, 120 Ill. App. 3d 668 (1983), all to little effect. Most relevantly, in *Jubilee*, the court considered the issue of whether the plaintiff had demonstrated that the original proprietor intended to donate the disputed property for public use. *Jubilee*, 405 Ill. App. 3d at 495. There, the disputed property was labeled as a " 'public square,' " but, unlike the streets and alleys designated in the plat, it was not also expressly dedicated " 'for public use forever.' " *Id.* The court determined that designating the disputed property as a "public square" was sufficient. *Id.* at 496. In *Jubilee*, unlike in this case, the streets and alleys were expressly dedicated for public use, and the disputed property was also denominated "public," which the court interpreted as a dedication for public use. However, the relevant principle relied upon in that case was that " '[t]he words on the plat indicate the intention of the dedicators.' " *Id.* (quoting *Melin v. Community Consolidated School District No. 76*, 312 Ill. 376, 380 (1924)). We have employed the same principle in reaching our result in this case: we have looked at the plat, and only the plat, in determining whether the proprietor intended to dedicate the streets to the public. *Bigelow*, 372 Ill. App. 3d 65. However, the *Jubilee* court was not confronted with silence: all of the public-use territory was expressly marked as dedicated for public use. Beyond limiting our examination to the plat, then, *Jubilee* does not provide much guidance.

¶ 60 *Mount Prospect*'s relevance is even more tenuous. There, the court considered whether the municipality could sell property once it had been dedicated to the public. *Mount Prospect*, 167 Ill. App. 3d at 1036-37. The fact that the property at issue had been dedicated "for public

purposes" pursuant to a village ordinance was incidental to the issue under consideration. *Id.* at 1035. Moreover, the court considered not whether the property had been dedicated to the public, but only whether the village could sell it to a private builder once it had been dedicated for public use. *Id.* at 1036-37. *Mount Prospect*, then, is wholly irrelevant to the issues in this case. The entirely incidental fact that the plat at issue there followed a village ordinance and designated the property "for public purposes" helps to illuminate none of the issues present in this case.

¶ 61    Finally, intermediate in plaintiff's troika of irrelevancy is *Gabel*, in which the court considered the issue of whether a lienor could enforce a lien where the improvement underlying a street was not connected with an improvement on the subject properties. *Gabel*, 120 Ill. App. 3d at 671. The court noted that the street had been platted as " 'MILL (hereby dedicated) STREET,' " and it considered how the municipality's acceptance of the dedication after the lien had been filed affected the lien's viability. *Id.* at 672-73. Thus, while the court did consider issues present in this case, it was not in the context of determining whether territory had been dedicated for public use or whether the municipality accepted the dedication. *Gabel*, too, provides little guidance here.

¶ 62    As a final consideration, we note that, in plaintiff's reply brief, rather than respond to Elmhurst's contentions, plaintiff simply reiterates the same arguments, supported by the same cases, that it made in its original brief. Plaintiff does add that the version of section 3 of the Plat Act in effect when the H.O. Stone Addition was platted and the current version of section 3 are effectively identical. This effectively undercuts any argument that the cases on which plaintiff relies are distinguishable based on differences between the two versions of the Act; however, we have not distinguished any of the cases on that ground. Moreover, although an argument that *Kennedy* and *Thompson* have been superseded by more recent developments in the law might

have proved interesting and fruitful, plaintiff does not make such an argument, either expressly or impliedly, and we therefore do not consider it now.

¶ 63    For the foregoing reasons, then, we hold that trial court correctly determined that Elmhurst demonstrated that the proprietor of the plat of the H.O. Stone Addition effected a statutory dedication of West Avenue for public use.  Because we determine that West Avenue was the subject of a statutory dedication, we need not consider plaintiff's contentions regarding common-law dedication.

¶ 64                                    B. Acceptance of Dedication

¶ 65    Plaintiff next argues that the trial court erred in determining that Elmhurst accepted the dedication for public use of West Avenue.  As noted, a statutory dedication occurs when the property owner records a plat indicating that portions of the premises are donated to the public and the public entity accepts the dedication.  *Bigelow*, 372 Ill. App. 3d at 64.

¶ 66    The acceptance of a dedication can be shown by any act that clearly indicates the public entity's assumption of jurisdiction and dominion over the property at issue.  *Republic Bank*, 2015 IL App (3d) 130379, ¶ 20.  The acceptance of a dedication can be either express or implied.  *Id.* An express acceptance can be shown by a direct municipal action, such as the passing and recording of an order, resolution, or other action accepting the dedication, and this may occur after suit has been filed to determine the ownership of the property.  *Id.*

¶ 67    On the other hand, an implied acceptance can be deduced from municipal acts recognizing the existence of platted streets and treating them as public streets.  *Id.* ¶ 21.  The acceptance of some of the platted streets raises the presumption that the public entity accepted all of the platted streets.  *Id.*  The public entity need not make immediate use of the dedicated property to indicate its acceptance; the public entity is allowed to wait a reasonable time for

opening and improving its public streets, as its own resources and the public need allow and require. *Id.* If, due to the general unoccupied character of the area, there is no need to improve the property in question, the public entity is not required to improve it simply to establish that it accepted the dedication. *Id.* The unimproved condition of streets and common areas does not rebut the presumption of an implied acceptance by a public entity. *Id.* Regarding timeliness, it is well settled that an acceptance is timely if it is made before an offer to dedicate has been formally withdrawn or revoked by the dedicator. *Id.* ¶ 22.

¶ 68    With these general principles in mind, we turn to the facts of this case. In 1925, the plat of the H.O. Stone Addition was recorded. In 1927, Elmhurst annexed much of the territory in the H.O. Stone Addition, all of it lying to the east of Salt Creek, not including the disputed property. In 1962, Elmhurst annexed the rest of the territory in the H.O. Stone Addition (the territory to the west of Salt Creek), including the disputed property as the western boundary of the territory. The 1962 annexation appeared to include both Elmhurst's portion of the disputed property and the 25-foot-wide remainder of West Avenue currently claimed by Villa Park. At some point, Elmhurst paved the streets in the H.O. Stone Addition that were annexed in 1927, and it has continued to maintain and repair them. The record does not reveal whether any of the paving took place after 1962, so we will assume that it did not.

¶ 69    In 1968, Elmhurst expressly vacated portions of Coolidge Street, Wilson Street, and Harding Street from the H.O. Stone Addition. The vacated portions of the streets begin at their intersections with West Avenue and extend east for 200 feet. The Vacation Ordinance did not include West Avenue, even though West Avenue had not been developed by this time. Also in 1968, Elmhurst approved the Matthew's Subdivision plat. This plat recognized that 200-foot portions of Coolidge, Wilson, and Harding Streets had been vacated, beginning at West Avenue

and extending east. The plat of Matthew's Subdivision depicts Elmhurst's portion of West Avenue as the western boundary of Matthew's Subdivision.

¶ 70    In 1974, Elmhurst obtained fee simple title to lot 1 (excluding some territory not relevant to our case). In 1983, Elmhurst leased certain property, including its portion of the disputed property, to the Park District. In 1995, Elmhurst again leased certain property, including its portion of the disputed property, to the Park District. At some time in the mid-1980s, the then-owner of plaintiff's property erected a fence along the eastern boundary of West Avenue. This fence apparently continued undisturbed until April 2014, when Elmhurst or Villa Park removed it and placed another fence along plaintiff's lot line. Sometime between 2002 and 2005, plaintiff began to store vehicles and trailers on the disputed property. The record contains no indication that, at any time before plaintiff instituted its suit in this case, the dedicator, or its successors, of the H.O. Stone Addition withdrew or revoked the dedication of West Avenue. Likewise, there is nothing in the record indicating that Elmhurst passed an ordinance expressly accepting the streets on the H.O. Stone Addition plat.

¶ 71    Applying the principles outlined above to these facts results in the conclusion that Elmhurst accepted the dedication of West Avenue for public use. We note that the act of approving a plat does not signify the municipality's acceptance of the streets dedicated for public use. *Gabel*, 120 Ill. App. 3d at 672. However, the acceptance of some of the streets on a plat raises the presumption that all of the streets have been accepted, and even a failure to improve the streets does not rebut the presumption of acceptance. *Republic Bank*, 2015 IL App (3d) 130379, ¶ 21. Here, most of the streets in the H.O. Stone Addition were improved. This is a clear acceptance of the streets dedicated for public use, and it raises the presumption that all of the streets were accepted. In 1962, Elmhurst annexed the remainder of the territory in the H.O.

Stone Addition, and this action extended its acceptance to that territory. The fact that West Avenue had not been improved does not rebut the presumption of acceptance raised by the acceptance of the other streets. The vacation of portions of Coolidge, Wilson, and Harding Streets reinforces the conclusion that Elmhurst accepted the dedication of West Avenue for public use. Elmhurst vacated the portions of Coolidge, Wilson, and Harding Streets beginning at their intersections with West Avenue and extending east for 200 feet. Had Elmhurst intended also to vacate West Avenue, it would have indicated that intent at that time, but West Avenue was excluded from the vacation. Accordingly, the Vacation Ordinance actually supports Elmhurst's acceptance of the dedication of West Avenue for public use.

¶ 72    In 1974, Elmhurst received fee simple title to lot 1 of Matthew's Subdivision, which forms the eastern boundary of West Avenue. Because it had accepted the dedication for public use of West Avenue, it also had fee simple title to its portion of the disputed property. *Id.* ¶ 18. In 1983, Elmhurst leased lot 1 of Matthew's Subdivision and its portion of the disputed property to the Park District. Even if it had not accepted the dedication before this time, its lease of the property it owned was a clear acceptance of the property's dedication. In 1995, Elmhurst again leased its portion of the disputed property to the Park District. At some point, the Park District incorporated the leased territory into a park, and Elmhurst zoned nearby territory, including its portion of the disputed property, for use as a park. Based on these facts, we believe that the evidence unequivocally supports Elmhurst's position that it accepted the dedication for public use of its portion of the disputed property.

¶ 73    Plaintiff argues that we are to properly consider such factors as: (1) a municipality's filing suit to establish a dedication or taking other direct action; (2) the municipality's possession or maintenance of the property; and (3) the public use of the property for a substantial period of

time. Plaintiff correctly cites *First Illinois Bank of Wilmette v. Valentine*, 250 Ill. App. 3d 1080, 1092 (1993), for this point. However, *Valentine* does not conflict with the more general rule that acceptance can be determined by any act with respect to the property at issue. *Republic Bank*, 2015 IL App (3d) 130379, ¶ 20. Thus, *Valentine*'s narrow focus might be a useful analytical tool, but we may still consider the totality of the circumstances. Moreover, *Valentine* appears to offer only a list of examples rather than an exclusive list of factors that can show a municipality's acceptance, and it notes that, in any event, the inquiry is based on the particular facts of each case. *Valentine*, 250 Ill. App. 3d at 1092.

¶ 74    Referring to *Valentine*'s factors, plaintiff contends that Elmhurst cannot demonstrate an acceptance. We agree that Elmhurst cannot satisfy the first and third *Valentine* factors.

¶ 75    However, regarding the second *Valentine* factor, we reject plaintiff's assertion that Elmhurst cannot show possession or maintenance, especially in light of the aerial photos. First, Elmhurst demonstrated possession of its portion of the disputed property as we outlined above. The key points are the eventual annexation of the territory including its portion of the disputed property, which gave rise to the presumption of acceptance of West Avenue in light of the acceptance of other platted streets; the Vacation Ordinance, in which Elmhurst expressly vacated other platted streets but not West Avenue; Elmhurst's obtaining fee simple title to the property adjacent to West Avenue; and Elmhurst's lease of the territory over which it held title, including its portion of the disputed property, to the Park District. These adequately demonstrate Elmhurst's possession of its portion of the disputed property, and the fact that the property remained unimproved does not rebut the possession, especially in light of the fact that it was zoned and used for recreational and conservational purposes upon its lease to the Park District. Thus, Elmhurst has satisfied the second of *Valentine*'s factors to demonstrate acceptance.

¶ 76    Plaintiff urges that the aerial photos dispute Elmhurst's possession, because they show that plaintiff has been storing vehicles and trailers on the disputed property. However, only two photos, the 2005 and 2013 photos, show vehicles and trailers on the disputed property; the 2002 photo does not show anything on the disputed property. Even if the previous owner of plaintiff's property enclosed the disputed property with a fence, this fact does not assume any particular significance in an undeveloped, unimproved park, whereas placing a barricade across a street would be immediately noticeable.

¶ 77    Plaintiff also argues that Elmhurst's plat of its wastewater-treatment plant fails to show that the disputed property is included within lot 1 of Matthew's Subdivision. We disagree. The plat of the plant does not show any section lines or municipal boundaries. Instead, it shows territory owned by Elmhurst. By operation of law, the territory representing West Avenue is also owned by Elmhurst. *Republic Bank*, 2015 IL App (3d) 130379, ¶ 18. Plaintiff's reliance on *Valentine*, therefore, is unavailing.

¶ 78    Plaintiff argues that Elmhurst did not timely accept the dedication of its portion of the disputed property. According to plaintiff, something short of 55 years is the outer limit for a timely acceptance. *City of Venice v. Madison County Ferry Co.*, 216 Ill. 345, 353 (1905). To the contrary, *Venice* turned on its unique facts. In *Venice*, the city's predecessor platted territory that was washed away by the Mississippi River. The court held that this constituted a sort of constructive withdrawal of the dedication of the streets. When the city attempted to claim that it had accepted the dedication, the court determined that the river's inundation and the lack of public use of the platted territory constituted a withdrawal occurring well before the city's purported act of acceptance. *Id.* at 350-53. In particular, the court reasoned that 15 years before the city's predecessor was incorporated, the disputed property had been abandoned when the

ferry that served the disputed property was moved outside of the platted territory altogether due to the vagaries of the river. *Id.* at 351. *Venice* did not decide that 55 years was an outer limit of a reasonable time for acceptance; rather, it determined that the original dedication was withdrawn when the river caused the ferry to relocate and the public stopped using the disputed property. Moreover, *Venice* observed the rule that an owner can withdraw a dedication if it has not been accepted within a reasonable time. *Id.* at 350. Because the withdrawal occurred before the acceptance was even possible in *Venice*, we see little application to the facts of this case.

¶ 79    Instead, we believe that *Republic Bank* states the proper rule: "acceptance is timely if made before the offer to dedicate has been formally withdrawn or revoked by the dedicator." *Republic Bank*, 2015 IL App (3d) 130379, ¶ 22. Here, the record does not indicate that the dedicator or its successor ever attempted to withdraw the dedication before the acceptance occurred. More importantly, plaintiff does not stand in the shoes of the dedicator; rather plaintiff is attempting to claim the disputed property through adverse possession. Therefore, any actions undertaken by plaintiff or the previous owner had no effect on the offer of dedication and could not operate to withdraw the dedication. Because Elmhurst demonstrated acceptance of a dedication that was never withdrawn, and because the record reflects nothing like the river's inundation and the abandonment of the disputed property in *Venice*, we cannot say that Elmhurst's acceptance was not timely.

¶ 80    Plaintiff contends that a municipality may accept only a part of a dedicator's offer to dedicate property for public use. We agree that there is authority to that effect. However, under the circumstances of this case, we believe that Elmhurst has demonstrated its acceptance of the dedication of its portion of the disputed property for public use and that therefore the principle urged by plaintiff does not apply to this case.

¶ 81 Plaintiff also contends that Elmhurst has failed to explain how it accepted its portion of the disputed property's dedication as a public street whenever it finally made that acceptance, but is currently claiming that the property was dedicated as a public park, in conformance with its current use. We agree that Elmhurst has not explained the apparent change in purpose from a public street to a public park. However, plaintiff does not argue or support with authority the claim that, once a public roadway, always a public roadway. Ill. S. Ct. R. 341(h)(7) (eff. Feb. 6, 2013) (arguments not raised or supported by citation to pertinent authority are forfeited). Moreover, we have held that the dedicator donated the disputed property for public use, and the property's lease to the Park District and its subsequent use as a park is consistent with public use. Thus, although Elmhurst might be guilty of moving the goalpost by claiming that its portion of the disputed property was dedicated as a public street but is now deemed part of a public park, the overarching dedication of the disputed property was for public use, and nothing in the record suggests that Elmhurst has attempted to change the fundamental nature of that designation.

¶ 82 For the foregoing reasons, then, we hold that Elmhurst accepted the dedication of its portion of the disputed property.

¶ 83                                C. Public Use

¶ 84 Plaintiff last argues that the trial court erred in determining that Elmhurst's portion of the disputed property was subject to public use. Plaintiff asserts a claim of adverse possession against the disputed property. As we have determined, Elmhurst is vested with fee simple title to the property. Generally, in order to make a claim of adverse possession, the claiming party must possess the land for 20 years and must prove that the 20 years of possession was (1) continuous, (2) hostile or adverse, (3) actual, (4) open, notorious, and exclusive, and (5) under a claim of title inconsistent with that of the true owner. *Miller v. Metropolitan Water Reclamation District of*

*Greater Chicago*, 374 Ill. App. 3d 188, 189-90 (2007).  However, where the claim of adverse possession is against a municipality, if the disputed property is held by the municipality in trust for public use, the 20-year limitations period will not run.  *Id.* at 190.  Thus, whether a claim of adverse possession against property owned by a municipality will lie turns on whether the property is for public use.  *Id.*

¶ 85    Close to the turn of the previous century, our supreme court considered the meaning of public use in the context of adverse possession:

"The rule that statutes of limitation do not run against the State also extends to minor municipalities created by it as local governmental agencies, in respect to governmental affairs affecting the general public.  This exemption extends to counties, cities, towns and minor municipalities in all matters respecting strictly public rights as distinguished from private and local rights, but as to matters involving private rights they are subject to statutes of limitation to the same extent as individuals.  [Citations.]

The question in this case is whether there is an implied exemption from the statutes of limitation in favor of trustees of schools with respect to property held for the use of a particular school district, and that depends upon the meaning of the term 'public rights,' as used in the decisions.  In one sense, all property held by a municipal corporation is held for public use, and the public at large, or some portion of the public, have rights or interests in such property.  It may be held for the use of the people of the State generally, or the use may be limited to the inhabitants of the local subdivision or municipality, such as the city, village, or school district.  ***  [T]he public right and public use must be in the people of the State at large, and not in the inhabitants of a particular local district.  ***  [T]here is a well-founded distinction between cases where

the municipality is seeking to enforce a right in which the public in general have an interest in common with the people of such municipality, and cases where the public have no such interest ***.

There are numerous cases where it has been held that municipalities or minor political subdivisions of the State are not subject to limitation laws in respect to streets and public highways [citation]; but streets and highways are not for the use of the inhabitants of any municipality or locality alone, but for the free and unobstructed use of all the people in the State. Such rights are clearly distinguishable from the rights or interests of the inhabitants of a locality in property acquired for a mere local use, such as city offices, a library site, or the use of the fire department. Such property is held and used for strictly local purposes." *Brown v. Trustees of Schools*, 224 Ill. 184, 186-88 (1906).

¶ 86 Thus, "public use," for purposes of a claim of adverse possession, means that the people of the state at large must have a general interest in the property at issue. This does not mean that the people of the state at large must have total and unlimited access to the property but, rather, that the property must be for the general benefit of the people of the state. If the property is for "public use" in this sense, then a claim of adverse possession against the property cannot lie. See *Miller*, 374 Ill. App. 3d at 191 (considering the implications of *Brown*'s definition of public use).

¶ 87 Of particular interest in *Brown* is the differentiation between local uses—such as of city offices, library sites, or fire departments—and of streets and highways—which are, almost by definition, the sorts of public uses *Brown* considered. *Brown*, 224 Ill. at 188. Plaintiff extends this differentiation to local park districts, contending that there is no statewide interest in park districts. *Board of Education of School District No. 150 v. City of Peoria*, 76 Ill. 2d 469, 477

(1979). Plaintiff concludes that, because there is no statewide interest in park districts, the use of Elmhurst's portion of the disputed property as part of a park, leased to and formed by the Park District, must not be a "public use" in the sense of *Brown*. We disagree.

¶ 88    We first note that *Board of Education* discussed not an issue of adverse possession, but whether a local home-rule unit may incidentally burden local park districts with an amusement tax. *Id.* While there might not be a statewide interest sufficient to preclude one municipal entity from placing incidental burdens upon another municipal entity, this does not even come close to addressing whether the property comprising a park presents a "public use" for purposes of a claim of adverse possession. Thus, plaintiff's reliance on *Board of Education* to extend the definition of "public use" is inapt.

¶ 89    In our view, the disputed property was dedicated and accepted as a public street. This places it squarely within the definition of "public use." *Brown*, 224 Ill. at 188; see also *Zemple v. Butler*, 17 Ill. 2d 434, 439 (1959) (streets are dedicated for "public use"; while a municipality can be estopped by its conduct to assert its right to a platted street, where, for example, there has been a long period of nonuse and permanent improvements have been constructed in good faith upon the land, where there are no permanent improvements the municipality will not be estopped). Thus, when Elmhurst accepted the dedication of its portion of the disputed property, it was for a public use. This public use continues to color the use of Elmhurst's portion of the disputed property, because it remains a portion of a platted, dedicated, and accepted public street, even if it has not been developed as a street. Moreover, the fact that Elmhurst's portion of the disputed property is under lease to the Park District does not necessarily change this view, because the lease provides Elmhurst with the right of reentry. In other words, the lease is

necessarily impermanent, and Elmhurst has the ability to decide the necessity of developing its portion of the disputed property as a public street, the use for which it was originally dedicated.

¶ 90 However, we recognize that the lease of Elmhurst's portion of the disputed property to the Park District and its subsequent use as a park muddies the picture. Plaintiff argues that we should consider the current use of the property in determining whether a claim of adverse possession may lie. *Miller* clearly answers plaintiff's contention.

¶ 91 In that case, the plaintiffs purchased land adjacent to property belonging to the Metropolitan Water Reclamation District of Greater Chicago (the District). *Miller*, 374 Ill. App. 3d at 189. The District leased the subject property to the City of Evanston with the right of reentry; the city in turn sublet the subject property to a private corporation that operated a community golf course. *Id.* The plaintiffs discovered that portions of their garage and other parts of their residential property were built or sited on the subject property. *Id.* The court first determined that the District's ownership of the land was for a public use, because the purpose for which the District was created was to preserve the health of the people of Chicago, the people living around Lake Michigan, the people living along the Des Plaines and Illinois Rivers, and the people of the State of Illinois. *Id.* at 191. The court concluded that "the subject property, to which the District holds title and to which it retains the right under the lease to reenter, is public property for the use and benefit of the people of the State. As such, it is not subject to adverse possession." *Id.* at 192.

¶ 92 This analysis, by itself, would seem to foreclose plaintiff's argument. Like the District in *Miller*, Elmhurst holds title to its portion of the disputed property, with a right of reentry under the lease. The disputed property was dedicated and accepted as a public street, so, under *Brown*,

it was dedicated and accepted for a "public use." Because the disputed property is public property for the use and benefit of the people of the state, it is not subject to adverse possession.

¶ 93    *Miller*, however, went a step further. The plaintiffs in *Miller* argued that the subject property had lost whatever public character it possessed, because it was used as a golf course owned by a private corporation. *Id.* The plaintiffs noted that *Brown* held that a municipality is treated as a private individual for purposes of adverse possession where the land at issue was held in partnership with individuals or for purposes of private business. *Id.* The plaintiffs concluded that the use of the subject property as a golf course owned by a private corporation divested it of protection from adverse possession. *Id.* The court distinguished *Brown* on the ground that the land at issue there was a school site to which the people of the state at large had no general interest in common with the inhabitants of the school district. *Id.* The court then held that the subject property, which started as a property owned for public use, was currently operated as a golf course open to all persons in the state at large and that, as such, the people of the state at large held a continuing general interest in the subject property during the leasehold, allowing the subject property to retain its public character. *Id.*

¶ 94    That reasoning fully applies here. The disputed property was dedicated and accepted for public use under *Brown*. When Elmhurst leased its portion of the disputed property, it did so under a right of reentry. The park is open to all persons of the state even though it is leased to a local park district. Moreover, the park is part of the Salt Creek Greenways Trail, a pedestrian and bicycle trail running through 12 municipalities and extending some 30 miles in length. "As such, the people of the state at large have a continuing general interest in the [disputed property] during the leasehold and, therefore, the [disputed property] retains its public character." *Id.*

¶ 95    Plaintiff argues that Elmhurst does not own any of the disputed property, so it could not lease it to the Park District. This contention is a nonstarter in light of our determinations above. Elmhurst holds fee simple title to its portion of the disputed property; it could properly lease that property to the Park District.

¶ 96    Plaintiff argues that, pertinently, the only portion of Elmhurst's property leased to the Park District was lot 1 of Matthew's Subdivision, which did not include its portion of the disputed property. As such, the lease cannot demonstrate any sort of dominion of the disputed property by Elmhurst, and it cannot be used to bootstrap onto the property any public character.

¶ 97    Again, we have answered the ownership question above. If Elmhurst's portion of the disputed property is not leased to the Park District, then Elmhurst retains it, and it maintains its public character as a dedicated and accepted public street, defeating plaintiff's argument. If the property is included in the lease to the Park District, plaintiff's argument still fails pursuant to the analysis in *Miller* discussed above. Either way, plaintiff's argument is unpersuasive.

¶ 98    Finally, plaintiff contends that the court erred by accepting the conclusory and argumentative averments from Rogers's affidavit that the disputed property is part of a local park used by the people of the state at large. However, the acceptance of the challenged averments is not critical to our analysis. Even if we reject the averments that the disputed property is used by the people of the state at large, the public character of the disputed property is established through the dedication and acceptance of it for use as a public street. Because Elmhurst owns its portion of the disputed property in fee simple, its subsequent lease of it (or not) to the Park District does not extinguish its public character, because Elmhurst has the right of reentry and the people of the state at large have a continuing general interest in the disputed property during the

leasehold, by virtue of its underlying public character. Accordingly, plaintiff's contention about Rogers's affidavit does not affect our analysis.

¶ 99 In a related fashion, plaintiff contends that Elmhurst failed to produce evidence sufficient to demonstrate that its portion of the disputed property is subject to "public use" in the sense of *Brown*. This contention fails because our analysis depends not on evidence that the park is used by persons of the state at large, but only on the operation of the legal principles we have identified and the ownership interests we have discussed above. Accordingly, we reject plaintiff's contentions.

¶ 100                                    III. CONCLUSION

¶ 101 For the foregoing reasons, the judgment of the circuit court of Du Page County is affirmed.

¶ 102 Affirmed.